## A02A0150. RICHARDS v. THE STATE.
### (563 SE2d 551)

MIKELL, Judge.

A Spalding County jury convicted Jerome Melvin Richards of aggravated assault. On appeal, Richards challenges the sufficiency of the evidence. He also argues that the trial court erred by removing him from the courtroom and trying him in absentia, and by informing the jury that he was removed because of his disruptive behavior. We affirm.

> On appeal from a criminal conviction, the evidence must be construed in the light most favorable to the verdict, and the appellant no longer enjoys a presumption of innocence. An appellate court determines only the legal sufficiency of the evidence adduced below and does not weigh the evidence or assess the credibility of the witnesses. To sustain the conviction, the evidence must be sufficient to authorize the jury's finding of the defendant's guilt of the crime charged beyond a reasonable doubt.[1]

So construed, the evidence shows that on November 21, 1998, Richards physically abused his girlfriend, Cheryl Blackmon. Blackmon testified that Richards slapped her in the face, causing her mouth to bleed, and that he threatened her with a hammer. Blackmon ran into her upstairs bathroom, raised the window, and yelled for help. As Richards stood over her in the bathroom, Blackmon heard her neighbor, Charlotte Penn, ask if everything was okay. Blackmon replied that everything was not okay and was eventually able to coax Richards down the stairs.

Blackmon held onto Charlotte after she and Richards walked down the stairs. Shortly thereafter, Charlotte's brother, Deon Penn,

---

[1] (Citation omitted.) *Hutchinson v. State*, 232 Ga. App. 368, 369 (501 SE2d 873) (1998).

entered Blackmon's apartment. As Richards tried to pull Blackmon away from Charlotte, Deon told Richards not to touch Charlotte. Blackmon ran to Charlotte's apartment and called the police. As she waited for the police to arrive, Charlotte and Deon came into the apartment. Charlotte had blood on her clothes, and Deon's face and head were bleeding.

Charlotte testified that after Blackmon left, she began to walk to her apartment. As Deon waited for her to enter her apartment, Richards tried to enter as well. When she told Richards that he could not come in, he turned to walk away, but then suddenly turned back and hit Deon in the head with a claw hammer several times. Charlotte testified that Deon did not hit or push Richards before Richards attacked him with the hammer.

Deon testified that he told Richards that he could not enter Charlotte's apartment. As Deon waited for Charlotte to enter her apartment, Richards hit him with what he believed was a hammer, and Deon fell to his knees. Richards continued to hit Deon in his head. Deon's injuries required 25 stitches in his left eye and 16 staples in his head and overnight hospitalization. Richards was indicted for the assault on Deon Penn.

1. In his first enumeration of error, Richards argues that the evidence was insufficient to sustain his conviction. We disagree.

OCGA § 16-5-21 (a) (2) provides that "[a] person commits the offense of aggravated assault when he or she assaults [w]ith a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury." We find the evidence that Richards beat Deon Penn in the head with a hammer more than ample to support Richards' conviction for aggravated assault. Richards' argument in his brief that Deon's injury occurred because they were fighting is not supported by the evidence.

2. Richards next argues that the trial court erred in removing him from the courtroom and trying him in absentia. In *Illinois v. Allen,*[2] the United States Supreme Court stated:

> [A] defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive and disrespectful of the court that his trial cannot be carried on with him in the courtroom. Once lost, the right to be present can, of course, be reclaimed as soon as the defendant is

[2] 397 U. S. 337 (90 SC 1057, 25 LE2d 353) (1970).

willing to conduct himself consistently with the decorum and respect inherent in the concepts of courts and judicial proceedings.[3]

On appeal, we utilize the abuse of discretion standard.[4]

In *State v. Fletcher*,[5] our Supreme Court held that *Illinois v. Allen* mandates that the trial "court make inquiry as to the state of mind of the defendant or warn him of the consequences of misconduct and inform him that by proper conduct he could regain the right to be present."[6] In this case, the record shows that Richards' questionable behavior began as soon as he entered the courtroom. The jury panel was not yet present. Richards stated: "Where is — Where McBroom at, man, my emissary [sic]? Where is he at any of y'all mother fuckers? And you better take these mother fucking handcuffs off me or I'll blow my brains out right here because you ain't not fixing to railroad me to no God-damned chain gang, ain't nare [sic] one of y'all." As the court announced Richards' case, the following colloquy occurred:

> Court: [L]et the record reflect that —.
> Richards: Care nothing 'bout no mother fucking record, man.
> Court: That the —.
> Richards: Damn your record.
> Court: Court presently has —.
> Richards: You, too.
> Court: — in front of it —.
> Richards: What the fuck you talking about?
> Court: — the case of the State of Georgia versus —.
> Richards: Damn the State, man.
> Court: — Jerome Melvin Richards.
> Richards: What the fuck you talking about? Damn right that's me, mother fucker.

The court read the charge and indictment number with continuous interruptions from Richards and then instructed the bailiffs to remove Richards from the courtroom. The trial judge then informed counsel that he planned to gag and shackle Richards and possibly tape his mouth, if necessary, to which Richards' counsel objected. Richards was allowed to return to the courtroom, and upon his return, he immediately began to curse at the judge and everyone else in the courtroom. He was never gagged or shackled.

---

[3] Id. at 343.
[4] *Weldon v. State*, 247 Ga. App. 17, 19 (1) (543 SE2d 56) (2000).
[5] 252 Ga. 498 (314 SE2d 888) (1984).
[6] Id. at 501.

As the court advised Richards of his right to be present, the following colloquy occurred:

Court: I am obligated —.
Richards: You ain't fixing to try me nowhere.
Court: — to inform you —.
Richards: You ain't — You ain't here fussing that, man. Go ahead and fuck —.
Court: — that you have a right to be in here during your trial.
Richards: Go ahead and fuck me up or put me back in. . . .
Court: However —.
Richards: I know a bunch of them that I did (inaudible) Goddamn hearts.
Court: — if you continue —.
Richards: You got them big 'ol mother fucker football players mother fuckers want to whop my mother fucking ass. . . .
Court: — your disruptive attitude —.
Richards: You got my hands tied to me, man, what the hell you think I is, man? Fuck you.
Court: — I'll have to remove you from this courtroom.

As the court began to instruct Richards in accordance with the mandates in *Fletcher*,[7] the record reflects that Richards made loud noises to prevent the court from being heard. The transcript does show, however, that the trial judge told Richards that he could come back into the courtroom if he changed his attitude. Richards replied that he did not want to be tried in the courtroom. Richards was removed, and the trial judge explained on the record the steps he had taken to inform Richards of his rights. The jurors were then brought in for voir dire.

After voir dire, Richards' counsel informed the court that he had asked Richards if he wished to go over the jury list with him and assist in selecting the jury, and Richards told him no. Richards' counsel also asked to meet with Richards to ask if he wanted to come into the courtroom to assist with the trial. The trial judge allowed him to do so and asked that he also inform Richards that he had a right to return to the courtroom if he could conduct himself in the proper manner. Outside the jury's presence, Richards' counsel informed the court that Richards did not want to assist in the trial or appear in the courtroom during the trial.

It is clear from the record that the trial judge warned Richards that he would be removed from the courtroom because of his conduct

---

[7] Supra.

and informed him that he had a right to return if he could conduct himself appropriately. Accordingly, we find that under the circumstances of this case, the trial court did not abuse its discretion by removing Richards from the courtroom and proceeding with his trial in his absence.

3. In his last enumeration of error, Richards contends that the trial court erred by informing the jury panel that Richards would not be present during his trial because he had been removed for disruptive behavior. In *Williams v. State*,[8] we rejected a similar argument. In that case, the defendant argued that the trial court expressed an opinion concerning his guilt when it ordered the defendant's removal from the courtroom and told the jury that he was removed because the court would not be disrupted by his behavior.[9] We held that the trial court's statement did not constitute an expression or intimation of the court's opinion as to the defendant's guilt. Here, the trial court told the jury:

> Mr. Richards himself is not in the courtroom. At this time briefly let me just state to each of you that Mr. Richards is not in here in that I had him removed from the courtroom because of some disruptive behavior. In the event that Mr. Richards changes his behavior he is welcome back in. He certainly has a right to be in this courtroom and to participate in this trial, at this time he has chosen not to.

After a bench conference, the court added: "And let me also instruct you that his failure to be in the courtroom should not be inferred or used against him in any form or fashion by you and, of course, the Court; and it's not to infer any type of guilt on his part concerning this particular case." As we concluded in *Williams*, we find that the trial court's explanation as to the defendant's absence in the case sub judice did not constitute an expression of the court's opinion as to Richards' guilt.

*Judgment affirmed. Andrews, P. J., and Phipps, J., concur.*

DECIDED APRIL 3, 2002.

*Sullivan & Sturdivant, Harold A. Sturdivant, Michele W. Ogletree*, for appellant.

---

[8] 183 Ga. App. 373 (358 SE2d 914) (1987).
[9] Id. at 375 (2).

*William T. McBroom III, District Attorney, Robert H. English, Assistant District Attorney*, for appellee.