### A02A0924. ROBERTS v. THE STATE.
(570 SE2d 708)

MIKELL, Judge.

A jury convicted Noel G. Roberts of nine counts of armed robbery, five counts of kidnapping, and one count of theft of a motor vehicle. The trial court sentenced him as a recidivist to a total of six consecutive terms of life in prison without parole plus eighty years to serve. Roberts appeals from the denial of his motion for new trial, asserting that the trial court erred in denying his motion for a continuance to secure a psychiatrist to perform an independent examination, refusing to disqualify his second public defender, failing to charge the jury on the option of guilty but mentally retarded, and admitting the testimony of the court-appointed psychologist. In addition, Roberts asserts that his two public defenders rendered ineffective assistance. Finding no error warranting reversal, we affirm.

The facts relevant to Roberts's enumeration of errors follow. His first attorney, public defender William Traylor, filed a notice of intent to present an insanity defense in May 1998. On June 1, the court ordered the members of the forensic services team at the Georgia Mental Health Institute to conduct a psychiatric evaluation of Roberts and to submit a report to the parties and the court. Traylor submitted a plethora of background information to the team, including police reports, summaries of witnesses' statements, Roberts's statement to police, and his criminal history. Traylor also wrote that Roberts had not confessed to all the charged crimes and was unlikely to do so when interviewed.

The forensic psychologist, Robert J. Storms, Ph.D., J.D., initially evaluated Roberts on July 7, 1998. According to Dr. Storms's report, Roberts stated that he had recently retained new counsel, Gail Mackinson, and wished to delay discussing his case until counsel familiarized herself with it. Mackinson entered an appearance on October 16, 1998. Dr. Storms interviewed Roberts again on October 2 and November 9, 1998, and filed a report with the trial court on December 14.

In his report, Dr. Storms found Roberts highly articulate, well-spoken, logical, and coherent. Dr. Storms concluded that Roberts was competent to stand trial and suffered no mental disorder that would have impaired his ability to distinguish right from wrong at the time of the crime. According to Dr. Storms, Roberts admitted that he had smoked $300 worth of crack cocaine and had become intensely para-

noid during the 72-hour period prior to his arrest. Dr. Storms diagnosed him as depressed and concluded that the depression led to self-medication, making him desperate and impulsive.

Dr. Storms testified during the hearing on motion for new trial that the first interview was very short because Roberts was in the process of obtaining new counsel. Although Roberts declined to discuss the charges against him during all three interviews, Dr. Storms reported that he felt capable of rendering an opinion concerning Roberts's state of mind at the time of the crimes based on the information he had been given concerning each incident.

Mackinson withdrew as Roberts's counsel on February 16, 1999, and the court immediately appointed a second public defender, John Oliver Ellis, to represent him. On the eve of trial on March 29, 1999, Roberts filed a pro se motion for a continuance, seeking the appointment of new counsel. Roberts informed the court that he was dissatisfied with Ellis because the attorney refused to present an insanity defense. In addition, Roberts believed that a conflict of interest existed between Ellis and the first public defender. Roberts planned to raise an ineffective assistance claim against his first lawyer for advising Roberts not to reveal the details of his crimes to Dr. Storms, and he intended to call counsel as a witness to establish that fact.

Contrary to Roberts's contentions, Ellis informed the court that he had subpoenaed Dr. Storms and was prepared to pursue an insanity defense. However, based on Dr. Storms's opinion and his own observations of Roberts, Ellis, an attorney with 20 years of experience, stated that he had advised Roberts that an insanity defense would not likely succeed. Ellis did acknowledge that he had refused to seek funds to retain an independent psychiatrist because he believed an additional evaluation would be futile.

Noting that the case had been pending for nearly 19 months, the trial court refused to delay the trial and concluded that Roberts had been manipulating the court. Roberts waived his right to counsel and proceeded pro se. The court appointed Ellis to remain and advise Roberts. He was convicted on all counts.

1. We first address Roberts's ineffective assistance of counsel claim against Traylor. Roberts argues that Traylor was ineffective for advising him not to reveal the details of his crimes to the court-appointed psychologist. We disagree. To establish ineffectiveness of trial counsel, a defendant must show that his counsel's performance was deficient and that the deficient performance prejudiced his defense.[1] The record shows that Dr. Storms evaluated Roberts pursuant to a court order and did not provide any treatment to him.

---

[1] *Strickland v. Washington*, 466 U. S. 668, 687 (104 SC 2052, 80 LE2d 674) (1984).

Accordingly, Dr. Storms was a witness for the court, and Roberts's communications with him were not protected by the psychologist-patient privilege.[2] "The standard for attorney performance is reasonably effective assistance considering all the circumstances, with a strong presumption that, under the circumstances, the challenged action might be considered sound trial strategy."[3] Traylor explained his strategy at trial when questioned by Roberts:

> I told you it was a dilemma. That anything that you said to the State psychiatrist could be used against you, and therefore, if you discussed the offense with them, it would clearly be reported to the State and be used against you. And that, therefore, you should seriously consider not discussing the crimes with them and surely not confessing to the crimes.

Roberts offered no evidence to rebut the presumption that Traylor's advice was sound trial strategy. It follows that Roberts has failed to carry his burden of showing that Traylor's performance was deficient.[4]

2. Roberts's ineffective assistance of counsel claims against his third attorney, public defender Ellis, are twofold.

(a) First, Roberts contends that Ellis was ineffective for refusing to request an independent psychological evaluation. This claim is meritless. Although Ellis testified at the hearing on motion for new trial, he was not questioned regarding this decision. Therefore, the decision is presumed strategic, and "strategic choices made after thorough investigation are virtually unchallengeable."[5]

(b) Roberts additionally asserts that the trial court should have disqualified Ellis because a conflict of interest existed between Ellis and Traylor such that Ellis could not have effectively cross-examined Traylor concerning his advice to Roberts. On this basis, Roberts contends that the trial court should have appointed him new counsel and granted him a continuance in order to permit additional preparation time. We disagree.

> The true test of whether trial counsel was ineffective due to a conflict of interest is whether an actual conflict adversely affected his performance. Until a defendant shows that his counsel actively represented conflicting interests, he has not

---

[2] *Christenson v. State*, 261 Ga. 80, 84 (2) (d) (402 SE2d 41) (1991); see also *In the Interest of L. H.*, 236 Ga. App. 132, 136-137 (3) (511 SE2d 253) (1999).

[3] (Footnote omitted.) *Himmel v. State*, 246 Ga. App. 845, 848 (2) (542 SE2d 557) (2000).

[4] Id.; see also *Thomas v. State*, 268 Ga. 135, 139 (12) (485 SE2d 783) (1997).

[5] (Punctuation omitted.) *Stephens v. State*, 265 Ga. 120, 122 (2) (453 SE2d 443) (1995), citing *Strickland*, 466 U. S. at 690.

established the constitutional predicate for his claim of ineffective assistance.[6]

Roberts's dissatisfaction with his first public defender's pretrial performance created no conflict of interest relevant to any issue that would properly be resolved by the jury. The trial court did not abuse its discretion in refusing to appoint outside counsel to represent Roberts at trial.[7] A similar issue was addressed in *Jefferson v. State*.[8] In that case, we held that a pending ineffectiveness claim based on trial counsel's pretrial performance created no conflict of interest relevant to the issues addressed at sentencing. Accordingly, the defendant was not entitled to the appointment of a different attorney for resentencing.[9] The same result obtains here. There was no error.

3. Roberts assigns error to the trial court's denial of his motion for continuance, in which he sought additional time to procure an order appointing an independent psychologist or psychiatrist to assist him in presenting an insanity defense. The trial court denied the request, finding no evidence that Roberts's sanity would be a significant factor at trial.

The defendant in *Rattansay v. State*[10] similarly objected to the trial court's refusal to order a second psychiatric examination. In that case, we noted the appropriate guidelines for evaluating such a claim.

A defendant must be given access to a psychiatrist for an examination and assistance in his defense when the defendant demonstrates to the trial court that his sanity at the time of the offense is to be a significant factor at trial. *Perkins v. State*, 215 Ga. App. 296 (450 SE2d 324) (1994). Although the trial court is authorized to order a mental health expert to examine the defendant in order to determine whether his sanity is likely to be a significant factor at trial, it is the defendant who bears the burden of making that preliminary showing. See *Bright v. State*, 265 Ga. 265, 271 (2) (d) (455 SE2d 37) (1995); *Perkins*, supra.[11]

---

[6] (Citation omitted.) *Gray v. State*, 240 Ga. App. 716, 718 (2) (523 SE2d 626) (1999).

[7] We note that new appellate counsel (Roberts's fourth lawyer) was appointed post-conviction in order to pursue an ineffective assistance claim against the public defenders.

[8] 209 Ga. App. 859 (434 SE2d 814) (1993).

[9] Id. at 861 (1).

[10] 240 Ga. App. 165 (523 SE2d 36) (1999).

[11] Id. at 167 (2).

The denial of a motion for a second psychiatric examination will not be overturned unless an abuse of discretion is shown.[12] There was no abuse of discretion in the instant case. As noted above, Dr. Storms concluded that Roberts was competent to stand trial and suffered no mental disorder that would have impaired his ability to distinguish right from wrong at the time of the crimes. Roberts did not present any evidence to rebut this conclusion. Therefore, he failed to make the preliminary showing that his sanity would be a significant factor at trial. The trial court did not err in denying his motion for a continuance in order to obtain independent psychiatric assistance.[13]

4. Next, Roberts alleges that the trial court failed to charge the jury on the option of finding him guilty but mentally retarded, OCGA § 17-7-131 (c).

The court gave a lengthy charge on insanity and mental illness, tracking closely the language in Suggested Pattern Jury Instructions, Vol. II: Criminal Cases (2nd ed.), pp. 55-60. However, the court omitted the pattern charge on mental retardation appearing on page 61. Additionally, the option of guilty but mentally retarded was not included on the special verdict form provided to the jury.

The charge on mental retardation is mandatory,[14] and its omission is error.[15] However, where, as here, the error is harmless, reversal is not required.[16] Dr. Storms testified at trial that Roberts was highly articulate, well-spoken, and "very bright." At the hearing on motion for new trial, Dr. Storms similarly testified that Roberts was so articulate and coherent that he had no reason to suspect mental retardation. Roberts presented no evidence to the contrary. Accordingly, the jury would not have been authorized to find that he was guilty but mentally retarded. Since the error was harmless beyond a reasonable doubt, reversal is not necessary.[17]

---

[12] *Callaway v. State*, 208 Ga. App. 508, 510 (1) (431 SE2d 143) (1993).

[13] *Rattansay*, supra; see also *Brown v. State*, 260 Ga. 153, 158 (7) (391 SE2d 108) (1990) (denial of funds to obtain independent psychiatric evaluation affirmed where defendant failed to rebut court-ordered psychiatrist's conclusion that he was sane).

[14] OCGA § 17-7-131 (c) provides:
In all criminal trials in any of the courts of this state wherein an accused shall contend that he was insane or otherwise mentally incompetent under the law at the time the act or acts charged against him were committed, the trial judge shall instruct the jury that they may consider, in addition to verdicts of "guilty" and "not guilty," the additional verdicts of "not guilty by reason of insanity at the time of the crime," "guilty but mentally ill at the time of the crime," and "guilty but mentally retarded."

[15] *Mack v. State*, 206 Ga. App. 402, 403-404 (2) (425 SE2d 671) (1992); see also *Moore v. State*, 217 Ga. App. 207, 208 (1) (456 SE2d 708) (1995) (guilty but mentally ill).

[16] *Heidler v. State*, 273 Ga. 54, 63 (14) (537 SE2d 44) (2000); *McDuffie v. State*, 210 Ga. App. 112, 113-114 (1) (435 SE2d 452) (1993).

[17] *Heidler*, supra; *McDuffie*, supra; cf. *Mack*, supra (reversal required where evidence of mental retardation presented).

5. Finally, Roberts asserts that the trial court should have excluded Dr. Storms's testimony because he was not qualified as an expert. Specifically, Roberts claims that the state failed to qualify Storms as an expert in post-traumatic stress disorder prior to soliciting testimony from him during cross-examination that Roberts did not meet any of the criteria for the disorder. This argument is meritless. It was Roberts, not the state, who summoned this witness. Any error in failing to qualify him as an expert was thus induced by Roberts. "Asserted prejudice based upon induced error is impermissible."[18] In any event, on cross-examination, the state established Dr. Storms's credentials as an expert in the field of forensic psychology. Finally, Roberts interposed no objection to Dr. Storms's qualifications and has thereby waived his right to raise this issue on appeal.[19]

6. In a supplemental brief filed more than 30 days after this appeal was docketed, Roberts's second appellate counsel filed an additional enumeration of error in which they asserted that Roberts did not voluntarily waive his Sixth Amendment right to counsel because he was not given ten days notice of attorney Mackinson's withdrawal. Under Court of Appeals Rules 22 and 26 (a), the brief and enumeration of errors must be filed within 20 days after the case is docketed. Since the supplemental brief at issue was filed more than 20 days after the appeal was docketed in this Court, the enumeration of error raised therein was untimely and will not be considered.[20] Roberts's motion to remand the case to the trial court for a hearing on this issue is denied.

*Judgment affirmed. Andrews, P. J., and Phipps, J., concur.*

DECIDED SEPTEMBER 6, 2002 — ▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*William R. Wansker, Bernard S. Brody, Thomas J. Ford III*, for appellant.

*J. Tom Morgan, District Attorney, Robert E. Statham III, Barbara B. Conroy, Assistant District Attorneys*, for appellee.

---

[18] (Citation omitted.) *Keri v. State*, 179 Ga. App. 664, 667 (1) (347 SE2d 236) (1986).

[19] *Clark v. State*, 248 Ga. App. 88, 91 (3) (545 SE2d 637) (2001).

[20] *Daniels v. State*, 244 Ga. App. 522, 523 (536 SE2d 206) (2000); *Lane v. State*, 239 Ga. App. 230 (1) (520 SE2d 705) (1999); *Wallace v. State*, 216 Ga. App. 718, 721 (6) (455 SE2d 615) (1995); *McGraw v. State*, 199 Ga. App. 389, 390 (405 SE2d 53) (1991); *Powell v. State*, 198 Ga. App. 509, 512 (3) (402 SE2d 108) (1991).