## S11A0113. WEAVER v. THE STATE.
(705 SE2d 627)

CARLEY, Presiding Justice.

A jury found Appellant Willie Lee Weaver guilty of the malice murder of his estranged wife Donna Weaver, two counts of aggravated stalking, and one count each of cruelty to children in the first degree and possession of a knife during the commission of a crime. The trial court entered judgments of conviction on those guilty verdicts and sentenced Appellant to life imprisonment for murder and to consecutive terms of ten years for each count of aggravated stalking, twenty years for cruelty to children, and five years for the weapons charge. A motion for new trial was denied, and Appellant appeals.[*]

1. Construed most strongly in support of the verdicts, the evidence, including extensive eyewitness testimony, shows that, after entry of a family violence protective order, Appellant was found after midnight outside the victim's apartment with a knife and was arrested. Two weeks later, he was released on bond and, three days thereafter, he purchased a fish fillet knife with a 12-inch blade. The next day, Appellant followed the victim and her sister Norma Jones into a restaurant parking lot and attempted to talk with the victim before her brother intervened. The victim and Ms. Jones reported the incident at the police department, picked up the victim's grandson from preschool, and went to a local grocery store. Appellant appeared at the store, yelled at the victim, and stabbed and slashed her multiple times, resulting in her death in the presence of her grandson. Appellant waited for police, stating that he would not hurt anyone else, that he came to do what he needed to do, that no one gets away with hurting him, and that the victim, whom he called by

---

[*] The crimes occurred on July 21 and August 9, 2005, and the grand jury returned an indictment on November 14, 2005. The guilty verdicts were returned on August 24, 2006, and the trial court entered the judgments of conviction and sentences on August 30, 2006. The motion for new trial was filed on September 20, 2006, amended on January 4, 2010, and denied on February 10, 2010. Appellant filed the notice of appeal on March 5, 2010. The case was docketed in this Court for the January 2011 term and submitted for decision on the briefs.

a derogatory term, deserved it because of what she did to him in court. The evidence was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Appellant was guilty of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Rose v. State*, 287 Ga. 238, 239 (1) (695 SE2d 261) (2010); *Lewis v. State*, 277 Ga. 534, 535 (1) (592 SE2d 405) (2004).

2. Prior to trial, the trial court ordered a mental evaluation of Appellant. Pursuant to that order, a forensic psychologist employed by the State examined Appellant and concluded, among other things, that he was provisionally competent to proceed to trial and to assist his attorney. Several months later, defense counsel obtained a separate evaluation by an independent psychologist, who determined that Appellant was competent to counsel with his attorney and to stand trial. The defense psychologist also noted in his report that Appellant's scores on tests of malingering suggested that he was not putting forth his best effort, and he appeared to have been attempting to come across as more impaired than he truly was. When trial was held three months later, Appellant refused to dress for court and had to be brought in by eight deputies. Before and during voir dire, he yelled and screamed incoherently numerous times, tried to bite his attorney on the arm, and eventually had to be restrained and removed from the courtroom. He could still be heard screaming in the holding cell and was returned to the jail. He then would bite his thumb and cause it to bleed when he knew that he was being watched. Appellant contends that the trial court erred in failing to suspend the trial after such bizarre and psychotic behavior until a mental evaluation could ascertain that he was competent to proceed.

A motion for a continuance is always addressed to the sound discretion of the trial court, and so is a request for a mental evaluation where, as here, a special plea of incompetence has not been filed. *Watkins v. State*, 237 Ga. 678, 680 (229 SE2d 465) (1976). See also *Peebles v. State*, 260 Ga. 165, 166 (2) (391 SE2d 639) (1990); *Roberts v. State*, 257 Ga. App. 296, 300 (3) (570 SE2d 708) (2002). Both prior psychological examinations revealed that Appellant was competent to proceed to trial. *Peebles v. State*, supra. The report of the defense psychologist also indicated that Appellant was a malingerer. The same psychologist visited Appellant at the end of the first day of trial, and alternately observed him through a window without his knowledge and spoke to him through a small window in the door to his cell. The trial court subsequently heard testimony from the defense psychologist that Appellant most probably was exaggerating his symptoms, that the previous tests of malingering had very strongly led the psychologist to view Appellant's motivation on all of the other tests as extremely suspect and had shown that those test

results were invalid, that there was no clinical reason that Appellant could not now cooperate, and that it was still the psychologist's opinion that Appellant was competent to stand trial. "There has been no showing in this case that the psychologist who examined and evaluated the appellant [both before and during trial] was unqualified to render an expert opinion regarding his competency to stand trial." *Ross v. State*, 173 Ga. App. 313, 314 (3) (325 SE2d 919) (1985). The trial court also noted that Appellant conducted himself appropriately in court on the day before trial, and heard testimony that his behavior in jail for over a year had not been problematic until a few days before trial when he said "it's showtime," began acting belligerently, and voluntarily stopped taking his medication.

Accordingly, the trial court was authorized to find that Appellant's courtroom behavior was actually "not evidence of incompetence but the very [malingering] that the [defense psychologist] warned [about] . . . ." *Thaxton v. State*, 260 Ga. 141, 143 (4) (390 SE2d 841) (1990). Compare *Brogdon v. State*, 220 Ga. App. 31, 33-34 (1) (467 SE2d 598) (1996).

> While there was testimony that [Appellant] was competent to stand trial, there was no testimony that he was incompetent. . . . The fact that the court allowed the trial to go forward after testimony concerning [A]ppellant's competency is in effect a sub silentio finding that he was competent.

*Harris v. State*, 256 Ga. 350, 352 (2) (349 SE2d 374) (1986). Compare *Baker v. State*, 250 Ga. 187, 192 (1) (297 SE2d 9) (1982). Under these circumstances, we conclude that the trial court did not abuse its discretion in denying a continuance for yet another evaluation of Appellant's competence to stand trial.

3. Appellant urges that the trial court violated his federal constitutional right to be present for his jury trial by failing to determine properly whether he waived that right.

As the Supreme Court of the United States held in *Illinois v. Allen*, 397 U. S. 337, 343 (90 SC 1057, 25 LE2d 353) (1970), a defendant can lose his right to be present at trial where, as here,

> "after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom. Once lost, the right to be present can, of course, be reclaimed as soon as the defendant is willing to conduct himself consistently

with the decorum and respect inherent in the concept of courts and judicial proceedings." [Cit.]

*State v. Fletcher*, 252 Ga. 498, 499-500 (314 SE2d 888) (1984). Appellant argues that, instead of bringing him back into the courtroom to inquire whether he intended to correct his conduct and wished to be present, the trial court erroneously put the burden on defense counsel to determine whether Appellant wished to reclaim his right to be present.

Upon request by the trial court, defense counsel repeatedly visited Appellant in jail and informed the court that Appellant did not wish to appear in the courtroom, even when the court met just two doors down from his cell. See *Richards v. State*, 254 Ga. App. 708, 711 (2) (563 SE2d 551) (2002). Furthermore, the trial court had firsthand knowledge of how difficult, explosive, and violent Appellant could be, and the court also properly consulted with the sheriff regarding the serious safety issues in bringing Appellant into the courtroom. See *State v. Jones*, 916 A2d 17, 36-37 (I) (B) (Conn. 2007).

The conduct of a defendant may be such that either the initial warning or returning him to the courtroom "would be a totally useless act." *State v. Fletcher*, supra at 501. We also "do not believe it would be reasonable to impose upon a trial judge the duty to make moment-by-moment inquiries as to whether the defendant's state is such that a [return to the courtroom] could be [allowed]." *State v. Fletcher*, supra. Instead, the accused's right to be present at all stages of trial "can be waived if the accused's counsel makes the waiver in the accused's presence, or with his or her express authority, or if the accused subsequently acquiesces to the waiver made by counsel. [Cits.]" *Williams v. State*, 251 Ga. 749, 798 (11) (312 SE2d 40) (1983). See also *Smith v. State*, 284 Ga. 599, 608 (4) (669 SE2d 98) (2008).

The *Allen* court did not set forth specific requirements for inviting a disruptive defendant to reclaim his right to be present. *State v. Chapple*, 36 P3d 1025, 1032 (I) (Wash. 2001) (En Banc).

> [L]ower courts have interpreted this right to require varying degrees of trial court involvement in the reclamation. We hold that the trial court's requirement that defense counsel speak with the defendant and report back to the court was appropriate in these circumstances and adequate to give the defendant an opportunity to reclaim his right to return. [In fact,] [i]t might be inappropriate for a trial court to insinuate into a decision to return and thus communication through defense counsel is preferable.

*State v. Chapple*, supra at 1033 (I). See also *Bailey v. State*, 249 Ga. 535, 539 (6) (291 SE2d 704) (1982). Under all of the circumstances, we find that the trial court did not abuse its discretion in proceeding with trial in Appellant's absence. See *Richards v. State*, supra at 712 (2).

4. Appellant further contends that, after being arrested and informed during custodial interrogation of his rights pursuant to *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966), he unequivocally asserted his right to remain silent, that the interview did not thereafter cease and, therefore, that his subsequent incriminating statement should not have been admitted into evidence.

Resolution of this issue depends upon whether Appellant "articulated a 'desire to cut off questioning with sufficient clarity that a reasonable police officer in the circumstances would understand the statement to be an assertion of the right to remain silent.' " *Perez v. State*, 283 Ga. 196, 200 (657 SE2d 846) (2008). After being told that his wife was dead, Appellant appeared to become emotional and said, "I can't talk right now." The GBI agent conducting the interview interpreted that statement as meaning that Appellant needed to compose himself before talking again. In context, "[t]he only reasonable interpretation of this statement is that his emotions had temporarily overcome his ability to speak." *State v. Galli*, 967 P2d 930, 935 (I) (Utah 1998). Appellant did compose himself, the agent finished reviewing the *Miranda* rights, and Appellant signed a waiver of those rights.

Soon afterwards, Appellant stated, "I don't want to say nothing. There's just so much to say." The GBI agent interpreted this statement to mean that "there was so much to say that maybe he didn't want to get into it at that point or didn't know where to start . . . ." "Viewed in this context, the statement 'I [don't want to] say[ ] nothing' is plainly not an attempt to cut off questioning . . . ." *Reeves v. State*, 241 Ga. 44, 47 (1) (243 SE2d 24) (1978). See also *United States v. Sherrod*, 445 F3d 980, 982 (7th Cir. 2006). It was part of the "give and take" of interrogation and may also be "reasonably understood to express [Appellant's] internal conflict and pain in being asked to recount [all that] had happened." *State v. Lockhart*, 830 A2d 433, 443 (Me. 2003). Accordingly, the statement was no more than "an equivocal invocation of his right to remain silent, and thus the interrogating officer[ ] had no obligation to stop questioning him. [Cit.]" *Turner v. State*, 287 Ga. 793, 795 (3) (700 SE2d 386) (2010). See also *Barnes v. State*, 287 Ga. 423, 425 (2) (696 SE2d 629) (2010); *Perez v. State*, supra at 201.

*Judgments affirmed. All the Justices concur.*

DECIDED FEBRUARY 7, 2011.

*Timothy L. Eidson,* for appellant.
*Denise D. Fachini, District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Elizabeth A. Harris, Assistant Attorney General,* for appellee.

