**FOURTH DIVISION**
**BARNES, P. J.,**
**RAY and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**September 28, 2015**

# In the Court of Appeals of Georgia

A15A0911. LAGON v. THE STATE.

BARNES, Presiding Judge.

A Clayton County jury found Shelton LaGon guilty of one count of statutory rape, two counts of aggravated child molestation, two counts of child molestation, and two counts of aggravated sexual battery. LaGon filed a motion for new trial, as amended, which the trial court denied. On appeal, LaGon contends that the trial court erred by failing to appoint different counsel to represent him at trial; by starting the trial and conducting portions of the proceedings in his absence after LaGon refused to enter the courtroom; and by declining to grant LaGon a continuance for an alleged discovery violation committed by the State. For the reasons discussed below, we affirm.

Following a criminal conviction, we view the evidence in the light most favorable to the verdict. *Towry v. State*, 304 Ga. App. 139 (695 SE2d 683) (2010). So viewed, the evidence showed that during the time period in question, the victim lived

with her older brother and her maternal grandmother in Clayton County. The victim's mother did not have custody of the victim or her brother, but she frequently would visit her children at the grandmother's home. LaGon was a friend of the victim's mother and had known the victim and her brother since they were small children, and he would attend family gatherings with them.

In June 2012, the victim was 12 years old and LaGon was 35 years old. One day that month, LaGon visited the grandmother's home. Only the victim and her brother were there at the time. After sending the victim's brother away to purchase some marijuana, LaGon approached the victim, who was taking a shower, and told her that he had sent her brother away and that "he [knew] something [they] could do." Once the victim got out of the shower and put on some clothes, LaGon approached the victim again and told her to come into the bedroom with him. LaGon told the victim to bend over the bed, and he then removed her pants and had vaginal sex with her. The victim started to bleed and was scared during the encounter. After having sex with the victim, LaGon left before the brother returned home.

The victim turned 13 later that summer. Several months passed, and LaGon then attended a family gathering at the grandmother's home when the victim was out of school on Thanksgiving break. That night, after the victim's mother left to do some

2

holiday shopping and the other family members had fallen asleep, the victim got up to use the bathroom. When she came out of the bathroom, LaGon approached her with his penis exposed. LaGon instructed the victim to bend over, removed her pants, and told her that they were going to "try something new." LaGon then penetrated the victim's vagina with his finger and had anal sex with her. LaGon left the home before the victim's mother returned from the store.

On December 15, 2012, LaGon attended another family gathering at the grandmother's home. That night, the victim's mother and brother fell asleep on the living room couch. LaGon and the victim were still awake in the same room. After making sure that everyone else was asleep, LaGon pulled down the victim's pants and penetrated her vagina with his finger. LaGon then had the victim perform oral sex on him while he rubbed her buttocks.

The victim's grandmother was asleep in her bedroom while the other family members were in the living room. However, the grandmother woke up during the middle of the night, and as the victim was performing oral sex on LaGon, the grandmother came into the living room on her way to check the lock on the front door. Although the living room was dark except for the light from the television, the grandmother could see that someone was performing oral sex on LaGon on the couch.

3

The grandmother could tell that the person performing oral sex wore a gray shirt and at first assumed that it was the victim's mother. But the grandmother then realized that only the victim was wearing a gray shirt and that she must have been the one performing oral sex on LaGon. The grandmother screamed at LaGon and kicked him out of her home.

The grandmother and mother took the victim to the hospital. The victim initially denied to her grandmother and mother that anything had happened with LaGon, but then began crying at the hospital and told them that she had oral sex with LaGon and previously had vaginal and anal intercourse with him. The victim also spoke with detectives about what had occurred, and she subsequently underwent a physical examination and was taken to a child advocacy center where a recorded forensic interview was conducted.

LaGon was arrested and indicted on one count of statutory rape, two counts of aggravated child molestation, two counts of child molestation, and two counts of aggravated sexual battery.[1] At the ensuing jury trial, the victim, her mother, her grandmother, and her brother testified to the events as set out above. The lead

---

[1] LaGon also was indicted on one count of rape, but the State later requested and obtained entry of a nolle prosequi on that count.

detective assigned to the case, the pediatric nurse who conducted the physical examination of the victim, and the forensic interviewer also testified. Additionally, the State introduced and played a recording of the victim's forensic interview.

After the trial court denied LaGon's request for new counsel, LaGon refused to attend the first few days of the trial. However, on the fourth day of the trial, LaGon was present and testified in his own defense. LaGon denied that he ever had sexual contact with the victim and claimed that it had been the victim's mother performing oral sex on him when the grandmother walked into the living room. LaGon admitted, however, that when he initially spoke with a detective in a recorded telephone conversation, he never claimed that the victim's mother was the one performing oral sex on him. According to LaGon, the victim's mother had falsely accused him because she did not want her boyfriend to know that she had performed oral sex on LaGon.

After hearing the conflicting testimony, the jury found LaGon guilty of the charged offenses. LaGon filed a motion for new trial, as amended, and the trial court conducted a hearing and denied the motion. This appeal followed.

1. LaGon contends that the trial court committed reversible error by denying

5

his request to discharge his appointed counsel and replace him with another attorney. We disagree.

An indigent defendant has no absolute right under the Sixth Amendment to counsel of his own choice. *Hulett v. State*, 296 Ga. 49, 56 (3) (766 SE2d 1) (2014). Rather, "[a] request by an indigent criminal defendant to discharge one court-appointed counsel and have another substituted in his place addresses itself to the sound discretion of the trial court." (Footnote omitted.) *Nicely v. State*, 277 Ga. App. 140, 141 (1) (625 SE2d 538) (2006). A trial court abuses its discretion only if the defendant's request "is supported by objective considerations favoring the appointment of [new] counsel, and there are no countervailing considerations of comparable weight." (Citation and punctuation omitted.) *Hulett*, 296 Ga. at 56 (3).

Here, the record reflects that LaGon was arrested in January 2013 and was appointed counsel a few days later. The same counsel had represented LaGon in a prior case and thus was familiar with LaGon. After his appointment in the present case, counsel met with LaGon at the jail and spoke with him on the telephone on several occasions, participated in reciprocal discovery with the State, and filed pretrial motions on LaGon's behalf.

The case was specially set for trial on January 13, 2014. When the case was called on that date, LaGon did not express any dissatisfaction with his representation or move for a continuance to secure new counsel. However, because the prosecuting attorney had a conflict, the case was reset for February 3, 2014.

When the case was called on February 3, 2014, LaGon rose in open court and for the first time expressed his dissatisfaction with his appointed counsel and his desire for new representation. LaGon claimed that his trial counsel had refused to interview the State's witnesses; had denied his request to let him watch the recording of the victim's forensic interview and hear the audio recording of his telephone conversation with the detective; refused to subpoena a potential defense witness; and had failed to retain an expert to review the forensic interview.

LaGon's appointed counsel responded that he had made efforts to convince the State's witnesses to speak with him but had been unsuccessful, which he explained was "not uncommon in a case of this nature." Counsel also explained that he had offered LaGon an opportunity to watch the victim's forensic interview, but LaGon had refused to watch it. Additionally, counsel told the court that he had planned to have LaGon listen to his recorded telephone conversation with the detective shortly before trial, but a bad winter storm had prevented him from meeting with LaGon to

7

play the tape for him. Counsel further stated that he was unaware of any favorable defense witnesses who could be subpoenaed, and that he had made a strategic decision, after reviewing the recorded forensic interview, not to hire an expert.

After listening to LaGon and his appointed counsel, the trial court denied LaGon's request for new counsel, but ordered that LaGon would be afforded an opportunity to watch the recording of the victim's forensic interview and listen to the audio recording of his telephone conversation with the detective during a recess before the trial commenced. In denying LaGon's request for new counsel, the trial court credited appointed counsel's explanations and found that he had made "sufficient efforts on behalf of his client and ha[d] made understandable tactical decisions" to which the court would give deference. The trial court further concluded that LaGon had the benefit of an appointed attorney who was "trained and experienced in the law" and that his "strong advice" was for LaGon to take advantage of his counsel's training and experience.

Following a recess during which LaGon listened to the victim's forensic interview and his telephone conversation with the detective, the trial court further noted that LaGon had been arrested in January 2013 but had not expressed any desire for new counsel until approximately 19 months later, on the morning of trial, and had

8

presented no evidence that would justify delaying the proceedings so that new counsel could be obtained. Consequently, the trial court made the additional finding that LaGon's request for new counsel was done "for the purpose of delaying the proceedings."

In light of this record, the trial court did not err in denying LaGon's request to discharge his appointed counsel and obtain new representation. Sitting as the factfinder on this issue, the trial court was entitled to disbelieve LaGon and instead rely on his appointed counsel's explanation of what had transpired between them and what preparation he had done on the case. See *Hickey v. State*, 259 Ga. App. 240, 243 (2) (a) (576 SE2d 628) (2003). Consequently, the trial court was authorized to find that LaGon had failed to demonstrate that his appointed counsel was unable or unwilling to effectively represent him. See *Feaster v. State*, 283 Ga. App. 417, 419 (2) (641 SE2d 635) (2007). Moreover, given the timing of LaGon's request, the trial court was authorized to find that LaGon was simply attempting to use the discharge of his appointed counsel and employment of new counsel as a dilatory tactic. See *Nicely*, 277 Ga. App. at 141 (1); *Hickey*, 259 Ga. App. at 244 (2) (a).

The trial court also was entitled to find that any dissatisfaction that LaGon had with his appointed counsel was outweighed by the countervailing considerations that counsel had been working on the case for approximately 19 months and that removing him from the case would further delay a trial that had already been continued once before. See *Hulett*, 296 Ga. at 57 (3); *Waddell v. State*, 292 Ga. App. 801, 804 (665 SE2d 893) (2008). And, at least some of LaGon's concerns with his appointed counsel were mitigated by the trial court's decision to afford LaGon an opportunity to watch the victim's forensic interview and listen to his recorded telephone conversation with the detective before the trial commenced.

Accordingly, because the record supports the trial court's conclusion that LaGon's personal preference for new counsel was not supported by objective considerations that outweighed countervailing considerations, the court did not abuse its discretion in denying his request to discharge his appointed attorney and obtain new counsel. See *Hulett*, 296 Ga. at 58 (3). LaGon therefore was not entitled to a new trial on the asserted ground.

2. LaGon contends that the trial court violated his constitutional right to be present at his trial by allowing the third day of the trial (February 5, 2014) to proceed in his absence. According to LaGon, he told jail personnel that he wanted to attend

10

the third day of the trial, but they refused to bring him to the courtroom after allegedly telling him that he was not needed in the proceedings. We conclude that LaGon's contentions are belied by the record and provide no basis for reversal.

Under the Sixth Amendment to the United States Constitution, a criminal defendant has the right to be present in the courtroom at all critical stages of his trial. See U.S. Const. Amend. VI; *Tennessee v. Lane*, 541 US 509, 523 (124 SC 1978, 158 LE2d 820) (2004); *Illinois v. Allen*, 397 U.S. 337, 338 (90 SCt 1057, 25 LE2d 353) (1970). Similarly, the Georgia Constitution affords a criminal defendant the right to be present at every stage of the proceedings materially affecting his case. See 1983 Ga. Const., Art. I, Sec. I, Par. XII; *Wilson v. State*, 274 Ga. 637, 639 (3) (555 SE2d 725) (2001). But the right to be present belongs to the defendant, and the defendant is free to waive that right. See *Lonchar v. State*, 258 Ga. 447, 452 (2) (a) (369 SE2d 749) (1988). In addition to an express waiver of his right to be present at trial, a defendant can implicitly waive his right to be present by conducting himself in a disruptive manner before the trial court or by voluntarily absenting himself from the proceedings. See *Allen*, 397 U.S. at 342-343; *Weaver v. State*, 288 Ga. 540, 542-543 (3) (705 SE2d 627) (2011); *Coley v. State*, 272 Ga. App. 446, 449 (3) (612 SE2d 608) (2005); *Anderson v. State*, 238 Ga. App. 866, 873 (3) (519 SE2d 463) (1999). A

11

defendant also can waive his right to be present through counsel, if the waiver is made by counsel in the defendant's presence or with his express permission, or if the defendant subsequently acquiesces to counsel's waiver. See *Allen v. State*, 199 Ga. App. 365, 367-368 (6) (405 SE2d 94) (1991). We will affirm the trial court's finding of waiver if there is any evidence to support it. See id. at 368 (6).

Although LaGon complains in this enumeration of his absence from the third day of trial, his absence on that day can only be fully understood through a rendition of the facts leading up to, including, and following that date. The relevant facts are as follows.

*The First Day of Trial (February 3, 2014).* As previously noted, on the morning of the first day of trial, LaGon asked to discharge his appointed counsel and obtain new counsel, but the trial court denied his request. The trial court then called a recess so that, among other things, LaGon could review the victim's forensic interview and his telephone interview with the detective. However, that afternoon, when the trial court reconvened the proceedings, a sheriff's deputy informed the court that LaGon was in the "attorney's booth" that was "just one wall away from the courtroom" and was refusing to return to the courtroom. The trial court instructed the deputy to speak with LaGon and inform him that if he failed to return to the

12

courtroom, the court would "take the position that he has voluntarily chosen to be absent from his trial." The trial court then called a recess so that the deputy could speak with LaGon in the attorney's booth.

After the recess, the deputy reported back to the trial court that he had informed LaGon that by refusing to come into the courtroom, LaGon would be giving up his right to attend the trial. According to the deputy, LaGon continued to refuse to come into the courtroom but insisted that his refusal was not a waiver of his right to attend the proceedings. The trial court then instructed the deputy to

> go back to the defendant and tell him that he needs to come into the courtroom. . . . And then I want you, to the extent you can, to cause him to come into the courtroom. However, if you determine that the only way you could cause him to come into the courtroom would be by engaging him in a fight, a physical struggle, . . . then stop and come report that back to me.

Following another recess, the deputy reported to the court, "[LaGon] said we're going to have to drag him in here if that's what it takes."

The trial court instructed LaGon's attorney to "step into the attorney booth and see if [LaGon] will speak with you on this issue." After meeting with LaGon, trial counsel reported, "[LaGon] has indicated to me that unless there is an agreement that

13

a new attorney be appointed he would have to be physically dragged into the courtroom."

> The trial court subsequently stated on the record,

> I have done everything I can think of to persuade [LaGon] to come out, including the information which has been conveyed to the defendant by the deputy sheriffs at my direction and at my direction by his own attorney, and as I understand it further, that the defendant's brother has been asked to speak with him as well.

After LaGon's counsel confirmed that LaGon's brother had tried to persuade him to attend court, the trial court instructed the deputies to once again tell LaGon "it's time to come to court," but cautioned the deputies that if a violent struggle would be necessary to accomplish that goal, to "stop and then come back and report that back to me."

After another recess, the sheriff's deputy in charge of courtroom security reported back to the trial court, "[LaGon's] still refusing. He has his legs wrapped around the seat. So in order to get him out here he's going to fight us." At that point, the trial court ruled that LaGon had voluntarily waived his right to be present at trial, but adjourned the case for the day, thereby giving LaGon time to reconsider his decision not to attend his trial.

14

*The Second Day of Trial (February 4, 2014)*. On the second day of trial, the lower court began the proceedings by asking LaGon's trial counsel if he had spoken with LaGon that morning about his willingness to attend trial. LaGon's trial counsel informed the court, "He indicates to me he does not wish to participate." LaGon's counsel also informed the trial court that LaGon was refusing to change out of a jumpsuit and into courtroom attire.

Jurors were brought into the courtroom and voir dire commenced. Before selection, the jury was instructed that LaGon had made a voluntary decision to absent himself from the proceedings but that jurors should "not hold that fact against the defendant in any way whatsoever. It's not a relevant factor in your decision at all if you're selected to participate as a juror[.]" After voir dire, the jury was sworn and the trial court again cautioned that LaGon's voluntary absence from the courtroom should not play any role in the juror's decision in the case. The trial then proceeded in LaGon's absence. When the trial court later adjourned the trial for the evening, the trial court instructed the jurors not to report back until 1:30 p.m. the following afternoon to accommodate the court's calendar in another jurisdiction.

*The Third Day of Trial (February 5, 2014)*. When the trial court reconvened the proceedings around 1:30 p.m. the following day, the court first noted that a

sheriff's deputy had informed the court that LaGon had been asked if he wished to come to court that day. The deputy said that LaGon had responded that "he would not leave the jail unless he was dragged out of the jail and brought into the courthouse." The trial court concluded that LaGon was continuing to voluntarily absent himself from the proceedings.

Additional witnesses testified at that point. After a recess, the trial court noted on the record that the court had been informed by a sheriff's deputy that LaGon now wished to come into the courtroom and be present for trial. The trial court called a further recess so that LaGon could get dressed in civilian attire and be brought to the courtroom.

Following the recess, LaGon's counsel reported to the trial court, "[LaGon] expressed to me that he has wanted to come to court all day and that he was told that jail personnel had been told he wasn't needed. Now that he's come here he's told me he does not want to participate in this case." After hearing counsel's report, a sheriff's deputy clarified to the trial court that LaGon had simply been told by jail personnel that he was not needed for court that morning and was only scheduled for court that afternoon. LaGon's counsel then told the trial court that he had informed LaGon that there had been no court that morning but that, once LaGon was informed that the

16

victim had already testified, Lagon decided he no longer wished to attend the day's proceedings. Concluding that LaGon was continuing to voluntarily absent himself from the courtroom, the court proceeded with trial for the remainder of the day in LaGon's absence.

*The Fourth and Fifth Days of Trial (February 6-7, 2014).* The next morning, LaGon came to the courtroom. LaGon was present for the remainder of the trial and testified in his own defense.

At the hearing on his motion for new trial, LaGon testified that he chose not to attend his trial because he believed he was not being represented well by his appointed counsel. According to LaGon, he thought he could stop the trial by refusing to attend. However, LaGon later admitted that he knew the trial was taking place without him. LaGon's appointed counsel also testified at the hearing that he had specifically advised LaGon of his right to attend his trial and that the trial court would proceed with the trial without him if he refused to come into the courtroom.

Based on this combined record, the trial court was authorized to find that LaGon was voluntarily absent for the first three days of trial and thus waived his constitutional right to be present during those proceedings.

The record shows that [LaGon] was repeatedly advised of his right to be present at trial, and he refused to attend. On the other hand, when he wanted to do so, [LaGon] attended the trial. The trial court instructed the jury that they were not to consider [LaGon's] absence in their deliberations. We find no error [in the trial court's decision to conduct the first three days of the proceedings in LaGon's absence].

*Coley*, 272 Ga. App. at 449 (3). See *Anderson*, 238 Ga. App. at 873 (3).

In reaching this conclusion, we note that once LaGon refused to enter the courtroom and attend the trial proceedings, the trial court was not required "to make moment-by-moment inquires" as to whether LaGon had changed his mind and wished to be present. (Citation and punctuation omitted.) *Weaver*, 288 Ga. at 543 (3). Rather, it was sufficient for the trial court to have the sheriff's deputies and LaGon's appointed counsel periodically speak with LaGon and inquire whether he had changed his mind and wished to attend, particularly since LaGon indicated that he would only return to the courtroom and speak with the trial court if physically forced to do so by the deputies. See id.

Lastly, while LaGon claims that he repeatedly asked to be taken to the courtroom on the third day of trial but was thwarted by jail personnel, the trial court was not required to reach such a conclusion. Rather, there was evidence from which

18

the trial court could find that the jail personnel simply told LaGon that he was not needed in the courtroom during the morning of the third day because the court was conducting other unrelated business, but that LaGon otherwise was given an opportunity to attend the court proceedings that afternoon but refused to do so. Accordingly, because there was evidence that would support a finding that LaGon knowingly and voluntarily chose to absent himself from the courtroom, the trial court did not err by proceeding with trial in his absence. See *Allen*, 199 Ga. App. at 368 (6) (applying an any evidence standard to the waiver question).

3. In a related enumeration of error, LaGon contends that the trial court violated his constitutional right to be present by starting the trial in his absence. According to LaGon, because he refused to enter the courtroom before the jury had been empaneled and sworn, waiver principles did not apply, and the trial court thus could not start the trial. We are unpersuaded under the specific circumstances of this case.

It is true that if a criminal defendant free on bond or on his own recognizance fails to appear at the start of trial, the trial court cannot try the defendant *in absentia*; instead, the trial court must delay the start of trial and rely on other sanctions such as bench warrants and bond forfeitures. See *Stacey v. State*, 254 Ga. App. 461, 462 (1)

19

(562 SE2d 806) (2002); *Riley v. State*, 252 Ga. App. 781, 781-782 (1) (556 SE2d 917) (2001); *Loper v. State*, 191 Ga. App. 515, 515-516 (1) (382 SE2d 212) (1989); *Pollard v. State*, 175 Ga. App. 269, 269-270 (333 SE2d 152) (1985). Waiver principles do not apply in that context, and if the trial court conducts the trial in the absence of the defendant, the court violates the defendant's constitutional right to be present, entitling him to a new trial. See id.[2] A trial "starts" once a jury has been empaneled and sworn. See *Pollard*, 175 Ga. App. at 270.

The present case, however, is clearly distinguishable. This is not a case where a defendant out on bond or his own recognizance failed to appear at the trial proceedings when they commenced and then was tried and convicted *in absentia*. Rather, LaGon was in state custody and made a conscious choice to attend some but not all of his trial, threatening to violently resist if the sheriff's deputies attempted to compel his attendance in the courtroom and thereby disrupt the court proceedings. Other courts have held that a defendant's right to be present at trial is not violated in the circumstance where the defendant is in custody and makes clear to the trial court

[2] In contrast, a criminal defendant free on bond or his own recognizance who is present when the trial starts, but later absconds during the course of the trial, waives his right to be present, and the trial can proceed forward in his absence. See *Hill v. State*, 290 Ga. 493, 494-495 (2) (722 SE2d 708) (2012); *Estep v. State*, 238 Ga. App. 170, 171-172 (1) (518 SE2d 176) (1999).

that he will not attend the start of trial without causing a disruption. See, e.g., *United States v. Sterling*, 738 F3d 228, 235-237 (11th Cir. 2013) (district court committed no error in finding that the defendant had waived his presence at trial under federal procedural rules, where the defendant, while in interview room before trial commenced, made clear that he would have to be forcibly brought into the courtroom); *United States v. Benabe*, 654 F3d 753, 768-774 (7th Cir. 2011) (district court did not violate defendants' right to be present at trial under federal constitutional and procedural rules by removing the disruptive defendants before the jury was selected). Cf. *United States v. Perkins*, 787 F3d 1329, 1338-1339 (11th Cir. 2015) (any purported constitutional or procedural error in the defendant's failure to be present at the beginning of trial was invited error and would not be reviewed on appeal, given that the defendant had refused to leave the interview room on the day his trial was set to begin in an effort to "sabotage the criminal proceedings").

We similarly conclude that where a criminal defendant who is in state custody – after being made aware of his right to be present and that the trial will proceed forward in his absence – refuses to attend the start of his trial without causing a disruption, the trial court has the discretion to conclude that the defendant has waived his right to be present for the proceedings and begin the trial in his absence. As the

21

United States Supreme Court has noted, "trial judges confronted with disruptive, contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the circumstances of each case." *Allen*, 397 U.S. at 343. See *Weaver*, 288 Ga. at 542-543 (3). And we do not believe that in this context, a trial court should be required to have a resistant defendant forcibly transported into the courtroom in front of shocked jurors so that he can quickly waive his right to be present and then be removed, simply so that it can be said that the defendant was "present" at the start of trial.

> Forcing the defendant to actually come into the courtroom, for no other reason than to have the jurors briefly eyeball him, would have served no good purpose, but instead would have endangered the safety of all assembled, prejudiced the defendant before the jury, and undermined the dignity of the court.

*United States v. Perkins*, No. 1:10-CR-97-1-JEC-LTW, 2013 WL 3820716, at *21 (N.D. Ga. July 23, 2013), aff'd, 787 F3d 1329 (11th Cir. 2015).

Accordingly, we conclude that the trial court committed no error by beginning LaGon's trial in his absence, given that LaGon was in custody and was informed of his right to be present and that the trial would proceed without him, but made clear

that he would not enter the courtroom without a fight. LaGon therefore is not entitled to a new trial on the enumerated ground.

4. Lastly, LaGon contends that the trial court committed reversible error by declining to grant a continuance after the State belatedly turned over the victim's hospital medical records in violation of the reciprocal discovery statute. We are unpersuaded.

Where the trial court has denied a motion for a continuance for a discovery violation, the defendant must show not only that the court erred in denying the continuance, but also that he was harmed by the denial. *Murray v. State*, 328 Ga. App. 192, 195 (3) (761 SE2d 590) (2014). Here, LaGon failed to make a proffer of the medical records, which therefore have not been made part of the appellate record, and he has not otherwise shown how a continuance would have been benefitted him.

The record reflects that defense counsel received the medical records on the second day of trial, and the proceedings recessed for the day before the State's first witness, the victim, had been subject to cross-examination. And, as previously noted, the trial court did not start the trial on the third day until that afternoon because of a scheduling conflict, and it was only at that point that defense counsel began his cross-examination of the victim. Thus, LaGon's counsel had the entire morning of the third

23

day of trial and the previous night to review the medical records and then use them for the cross-examination of the victim and other subsequent witnesses if he wished to do so. Accordingly, even if the State violated the discovery statute by its belated production of the victim's medical records, Lagon has failed to carry his burden of establishing that the violation was harmful and thus is not entitled to a new trial on that basis. See id.

*Judgment affirmed. Ray and McMillian, JJ., concur.*