**FOURTH DIVISION**
**BARNES, P. J.,**
**RAY and MCMILLIAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**November 17, 2015**

# In the Court of Appeals of Georgia

 A15A1389. CESARI v. STATE

RAY, Judge.

Brandon Cesari and Daniel Boccia were tried jointly before a jury for crimes resulting from an altercation that occurred behind a fraternity house on the campus of the Georgia Institute of Technology ("Georgia Tech"). Cesari and Boccia both were indicted for armed robbery (OCGA § 16-8-41); two counts of aggravated assault with intent to rob (OCGA § 16-5-21 (b) (1)); carrying a weapon in a school safety zone (OCGA § 16-11-127.1); and battery (OCGA § 16-5-23.1 (b)). The jury convicted Cesari on all counts, and he appeals from the denial of his motion for new

trial.[1] Cesari contends that he was denied his right to be present during a critical stage of the proceedings, and argues that he received ineffective assistance of counsel. For the reasons that follow, we reverse and remand.

Viewed in the light most favorable to the verdict, *Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979), the evidence shows that following a University of Georgia - Georgia Tech football game, Georgia Tech student Blake Bauer was in a friend's room at the Pi Kappa Phi fraternity house when he heard someone banging on the window. He went outdoors to investigate and saw two men who rushed at him and punched him in the face. He identified the men in court as Cesari and Boccia. He testified that Boccia punched him first, then Cesari punched him. The men punched him "at least ten times in the face."

Bauer fell down onto a PVC pipe, which he picked up and tried to swing at the men, hitting Cesari. He swung the pipe only once before Cesari snatched it from him. As Boccia grabbed him by the collar and backed him toward some air conditioning units, he saw that Cesari was pointing a knife at him. Bauer testified that the knife had

---

[1] The jury convicted Boccia of armed robbery, battery, and carrying a weapon in a school safety zone, but acquitted him on the two aggravated assault counts. He has filed an appeal raising enumerations which are unrelated to Cesari's appeal and which this Court will review separately

approximately a three-inch blade. Both men demanded Bauer's wallet and money. Bauer denied having any money. Cesari then hit Bauer in the back of the head with the pipe. Bauer felt a searing pain and fell to the ground. Boccia began patting Bauer's pockets, looking for a wallet, so Bauer took out his wallet and handed it to Boccia. The men opened the wallet, and upon finding that it contained no cash, threw it at Bauer and left the scene. Jurors saw surveillance video of the incident.

Another Georgia Tech student witnessed the incident from his window in a nearby fraternity house. At about 2:00 a.m., he saw two men breaking bottles, then saw them retrieve a knife from their car and walk toward the Pi Kappa Phi house, where they began throwing PVC pipes that were three to four feet in length. He testified that the street lights and fraternity house lights were on and that he could see the men's faces. He identified Boccia and Cesari, whom he had seen earlier at a party in his own fraternity house, as the men he saw throwing the pipes. However, he could not recall which man had the knife. He saw Bauer walk out of the Pi Kappa Phi fraternity house. Although Bauer did not approach Boccia and Cesari aggressively, both Boccia and Cesari began punching Bauer, who fell to the ground. When the men backed Bauer into the corner by the air conditioning units, one of them hit Bauer in the head with a PVC pipe.

3

The witness called 911, and Georgia Tech police arrested Cesari and Boccia later that evening. Officers found a knife in Boccia's pocket. The knife was admitted into evidence at trial and shown to the jury.

Boccia testified at trial; Cesari did not. Boccia testified that he and Cesari, who were both intoxicated, were behind the Pi Kappa Phi fraternity house "throwing some stuff around" when he looked into one of the fraternity house's windows. He said Bauer came outside and confronted him with a PVC pipe, hitting him in the forehead. Cesari took the pipe from Bauer, and Cesari and Bauer began to fight. Boccia threatened Bauer and testified that he "remember[ed] having [Bauer's] wallet in my hands," though he denied asking Bauer for the wallet. More specifically, he testified at trial that Bauer "brandished his wallet out" saying "take my wallet," then threw it to the ground. He further testified that he was too drunk to recall why he picked up the wallet, but said he looked through it. When shown the knife, he testified that his grandfather had given it to him and that he had given it to Cesari at some point in the evening to open a beer bottle. He said Cesari threw the knife to the ground and that he picked it up, not knowing it may have been used in the altercation.

1. Cesari does not challenge the sufficiency of the evidence. Rather, he argues that his constitutional rights were violated because he was denied the right to be present during a critical stage of the proceedings against him.

The record shows that on the second day of trial, at approximately 1:45 p.m., the trial court sent the jury out after the State rested its case, and it declared a 10-minute recess. When court reconvened at about 2:00 p.m., Cesari's attorney told the trial court that his client had not returned and that she did not know where he was. Proceedings were paused briefly, and the court asked counsel if she knew where Cesari was and if he was waiving his presence, noting that Cesari had absented himself from the trial once already. When Cesari remained missing, both Boccia's and Cesari's trial counsel asked for a continuance until the following day so Cesari could be located; Boccia's counsel then asked for a mistrial. Cesari's counsel noted that her client might be outside smoking and that he had a drug problem, but she said she did not know if that was why he had disappeared.

The trial court denied Boccia's motion for a mistrial and the defendants' motions for continuance, and it agreed to issue a bench warrant for Cesari. Court reconvened about 3:40 p.m., just more than an hour-and-a-half after Cesari had

5

absented himself. Boccia was called to testify , and his attorney completed direct examination. The State had begun cross-examination when Cesari's attorney informed the court that "My client just walked in." She continued, "I need to talk to him because I would like to see if he's intoxicated." The trial court refused to interrupt Boccia's testimony for this reason, so Cesari's attorney asked the court, "Can we ask the deputy to keep [Cesari] outside until after the examination?" The court replied, "Yes."

Some time later, the State requested that Cesari be let in, citing Confrontation Clause concerns. The trial court reasoned that Cesari waived his right "by not being here. He doesn't have the right to interrupt the middle of examination questioning." However, it nevertheless immediately called a recess, at about 4:45 p.m., after which Cesari was brought in and seated next to his lawyer. The State's cross-examination of Boccia continued.

The record does not indicate how much time elapsed between the moment that the trial court agreed that Cesari be kept outside the courtroom and the moment that the State's counsel asked that he be let back in. The record only reflects that the testimony which transpired between those two requests occupies 16 transcript pages, and it is clear that Cesari missed some or all of that testimony. At the hearing on the

6

motion for new trial, Cesari testified that he was outside the courtroom in the hallway and was unable to hear the proceedings. There is no evidence whether his lawyer told him what had transpired in his absence.

Under due process of law, a defendant has the right to be present that attaches at every critical stage of a criminal trial where his presence is necessary to contribute to the fairness of the proceedings. See *Huff v. State*, 274 Ga. 110, 111 (2) (549 SE2d 370) (2001). Our Supreme Court has determined that a "critical stage" in a criminal proceeding is one in which the "defendant's rights may be lost, defenses waived, privileges claimed or waived," or the outcome of the case may be substantially affected. (Citation and punctuation omitted). Id. at 111 (2). Thus, the defendant's right to be present attaches to the various critical stages of a trial, including, as here, the presentation of testimony to the jury. *Dawson v. State*, 283 Ga. 315, 322 (5) (658 SE2d 755) (2008).

Cesari now argues that he was denied his right to be present under the Georgia and United States Constitutions.

> [T]here is a critical difference between the right protected by the Georgia Constitution and the corresponding federal constitutional right. . . . [D]enial of the federal constitutional right to be present is subject to harmless error review on appeal. By contrast, under our case law, denial

of the right to be present guaranteed by the Georgia Constitution is not.
. . . [It] is presumed to be prejudicial. Thus, absent a valid waiver by
defendant, a violation of the right to be present enshrined in the Georgia
Constitution triggers reversal and remand for a new trial[.]

(Footnotes omitted.) *Peterson v. State*, 284 Ga. 275, 279 (663 SE2d 164) (2008).
Under both constitutions, a criminal defendant has the right to be present at all critical
stages of his trial. See *Illinois v. Allen*, 397 U. S. 337, 338 (90 SCt 1057, 25 LE2d
353) (1970); *Wilson v. State*, 274 Ga. 637, 639 (3) (555 SE2d 725) (2001). A
defendant may waive his right to be present through counsel, if the waiver is made
by counsel in defendant's presence or with his express permission, or if he
subsequently acquiesces in counsel's waiver. See *Allen v. State*, 199 Ga. App. 365,
367-368 (6) (405 SE2d 94) (1994). We will affirm a trial court's finding of waiver if
any evidence supports it. Id. at 368 (6).

Cesari does not contend, nor could he successfully do so under our well-settled
law, that he was denied his right to be present during the time that he voluntarily
absented himself from the courtroom. See *Byrd v. Ricketts*, 233 Ga. 779, 780 (213
SE2d 610) (1975). Rather, he argues that when he returned, he "regain[ed] the right
to be present," but that such right was denied him. We agree.

It is true that a trial court is "not required to make moment-by-moment inquiries" as to whether a defendant who voluntarily absented himself later wishes to present. See *LaGon v. State*, __ Ga. App. __ *7-*8 (2) ( __ SE2d __ ) (Case No. A15A0911, decided September 28, 2015) (finding that after a defendant refused to enter the courtroom, the trial court was not required to frequently check in with him to see if he had changed his mind and later wished to be present), citing *Weaver v. State*, 288 Ga. 540, 543 (3) (705 SE2d 627) (2011). However, Cesari returned and asked to be let in, and there is no evidence – despite his counsel's stated fears that Cesari might be intoxicated – that he was in fact disruptive in any way that would necessitate his being barred from the courtroom.[2] See, e. g., *State v. Fletcher*, 252 Ga. 498, 499-500 (314 SE2d 888) (1984). Nor is there any evidence that he either authorized or subsequently acquiesced in what could be viewed as his counsel's attempt to waive his presence. See *Allen v. State*, supra at 367-368 (6). Further, given that disruptive defendants may, under certain circumstances, reclaim their right to be present, *Fletcher*, supra at 501, we cannot say that a nondisruptive defendant who

---

[2] We found no information in the record as to why Cesari voluntarily absented himself.

9

voluntarily absents himself for a time may *never* regain his right to be present.[3] See *Fletcher*, supra at 499-500 ("Once lost, the right to be present can, of course, be reclaimed as soon as the defendant is willing to conduct himself consistently with the decorum and respect inherent in the concept of courts and judicial proceedings") (citation and punctuation omitted).[4]

Cesari, upon returning to court and seeking admission to his own trial, should have been allowed to enter. Because he was absent from a critical part of his trial and

---

[3] We note that *Illinois v. Allen*, supra, did not set forth specific requirements for readmitting a disruptive defendant. See *Weaver*, supra at 543 (3). *Illinois v. Allen*, supra at 343-344 and 345-346 (II), does indicate that the defendant has the burden to let the court know when he is ready to return and to behave appropriately. The record in the instant case indicates that, at the very least, Cesari let the trial court know that he was ready to return, notwithstanding his counsel's request that he be kept out. See generally *State v. Gillam*, 629 NW2d 440, 452 (II) (Minn. 2001) (where defendant who was excluded for disruptive behavior asked to be let back in, trial court did not err in continuing to exclude him because there was no evidence that defendant would not resume his disruptive behavior once he returned to court).

[4] The State cites to the following cases, but they are distinguishable: *Hunter v. State*, 263 Ga. App. 747, 747-748 (1) (589 SE2d 306) (2003) (where defendant left court and apparently *never* attempted to return, absence was deemed voluntary and defendant waived right to be present), *Estep v. State*, 238 Ga. App. 170, 170-172 (1) (518 SE2d 176) (1999) (same), and *Miller v. State*, 122 Ga. App. 869, 869 (1) (179 SE2d 256) (1970) (same). Also see *Stell v. State*, 210 Ga. App. 662, 663 (4) (436 SE2d 806) (1993) (trial court did not err in denying motion for continuance where defendant failed to appear on second day of trial and *never returned* prior to trial's completion, and where trial counsel did not know reason for absence).

10

did not acquiesce in any waiver by counsel once he made known that he was attempting to return to court, the judgment must be reversed and the case remanded for a new trial. See *Sammons v. State*, 279 Ga. 386, 388 (2) (612 SE2d 785) (2005).

2. As a result of our decision in Division 1, we need not address Cesari's remaining contentions of error.

*Judgment reversed and case remanded. Barnes, P. J., and McMillian, J., concur.*