**THIRD DIVISION**
**MCFADDEN, C. J.,**
**DOYLE, P. J., and HODGES, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**September 10, 2020**

# In the Court of Appeals of Georgia

A20A1347. HAYNES v. THE STATE.

MCFADDEN, Chief Judge.

After a jury trial, Robbin Haynes was convicted of five counts of armed robbery, two counts of aggravated assault, and giving a false name. Haynes appeals, challenging three decisions of the trial court that largely stem from Haynes's attempt to pursue a sovereign-citizen type defense. When appointed trial counsel would not assert Haynes's sovereign-citizen defense, Haynes informed the court that he wanted to represent himself. He argues on appeal that the trial court erred by granting his request because he did not knowingly and intelligently waive his right to counsel, but we hold that the trial court adequately informed him of the risks of proceeding without counsel. When Haynes repeatedly made statements based on his sovereign-citizen defense, interrupted the court, and, eventually stated that he was leaving the

courtroom, the trial court ordered him to be removed from the courtroom for disrupting the proceedings. Haynes argues on appeal that this violated his right to be present, but we hold that Haynes waived that right through his behavior. After he had been removed from the courtroom, the trial court ordered appointed counsel, who had been acting as standby counsel, to represent Haynes during the trial. Haynes argues on appeal that this violated his right to self-representation. But we hold that, once Haynes's disruptive conduct made necessary the termination of his self-representation, she had the authority to do so. Finally, Haynes argues that some of his convictions merge, and we agree. So we affirm in part, vacate in part, and remand this case for resentencing.

1. *Waiver of right to counsel*.

Haynes argues that he did not knowingly and intelligently waive his right to counsel because the trial court failed to adequately inform him of the dangers of self-representation. We disagree.

"[W]hen a defendant challenges an alleged waiver on appeal, it is the [s]tate's burden to prove that the defendant received sufficient information and guidance from the trial court upon which to knowingly and intelligently relinquish this right. This evidence must overcome the presumption against waiver." *Hamilton v. State*, 233 Ga.

App. 463, 467 (1) (b) (504 SE2d 236) (1998) (citations omitted). The state met its burden here. The record shows that Haynes wanted to present a sovereign-citizen defense, but the attorney who had been appointed to represent him refused to present it, informing Haynes that such a defense strategy would "do nothing except make the judge and the prosecutor angry." At the calendar call, counsel informed the court that Haynes wanted to present a sovereign-citizen defense, refused to cooperate with him, would not accept his correspondence, would not discuss the case with him, and did not want counsel to bring clothes for him. The trial court informed Haynes that counsel could not ethically assert defenses that had no basis in law. Haynes responded that "respectfully for the record once again I'm not entrusting what you're administrating today. Matter of fact I'm the sole owner, the grantor, the principal —" The trial court cut off Haynes, noted that he was being non-responsive, and stated that counsel remained his attorney.

The court called the case, and counsel announced that the defense was not ready because Haynes had informed him that he wanted to represent himself and did not want counsel to participate. The trial court engaged in a colloquy with Haynes and concluded that he voluntarily, knowingly, and intelligently waived his right to

3

counsel. The court relieved appointed counsel of his duties and, at Haynes's request, instructed the appointed attorney to act as standby counsel.

"Under *Faretta* [*v. California*, 422 U. S. 806 (95 SCt 2525, 45 LE2d 562) (1975),] the trial court must apprise the defendant of the dangers and disadvantages inherent in representing himself so that the record will establish that he knows what he is doing and his choice is made with eyes open." *State v. Evans*, 285 Ga. 67, 68 (673 SE2d 243) (2009) (citation omitted). Haynes argues that the trial court did not apprise him of the specific dangers inherent in representing himself in his case "such as the rules surrounding admissibility of a defendant's police statement, the rules governing automobile searches, and merger principles." But as Haynes acknowledges, the trial court is not required to engage in a formalistic inquiry. See *Iowa v. Tovar*, 541 U. S. 77, 88 (II) (124 SCt 1379, 158 LE2d 209) (2004) ("We have not . . . prescribed any formula or script to be read to a defendant who states that he elects to proceed without counsel."). See also *Evans*, 285 Ga. at 69 (trial court is not required to "probe the defendant's case and advise the defendant as to legal strategies to ensure that a waiver is intelligently made").

We and our Supreme Court have not articulated precisely how a trial court must apprise a defendant of the dangers inherent in representing himself. But see

4

*Wayne v. State*, 269 Ga. 36, 38 (2) (495 SE2d 34) (1998) (noting that although not required, it would be helpful if trial courts asked whether defendants understood the nature of the charges; the lesser included offenses; the range of possible punishments; and the possible defenses and mitigating circumstances). "Rather, the record need only reflect that the accused was made aware of the dangers of self-representation and nevertheless made a knowing and intelligent waiver." *Evans*, 285 Ga. at 68 (citation and punctuation omitted).

United States District Courts have guidance from the Bench Book for U.S. Dist. Ct. Judges (6th ed. 2013), which contains a framework that District Courts can follow to ensure a defendant is made aware of the dangers of self-representation so that his waiver of the right to counsel is knowing and intelligent. That framework, which is of course adjusted to federal law, is set out in the margin.[1]

---

[1]The federal judges' bench book suggests that the trial judge engage in the following discussion when a defendant expresses the interest in proceeding pro se:

1. Have you ever studied law?

2. Have you ever represented yourself in a criminal action?

3. Do you understand that you are charged with these crimes: [state the crimes with which the defendant is charged]?

5

4. Do you understand that if you are found guilty of the crime charged in Count I, the court must impose a special assessment of $100 and could sentence you to as many as ___ years in prison, impose a term of supervised release that follows imprisonment, fine you as much as $____, and direct you to pay restitution?

[Ask the defendant a similar question for each crime charged in the indictment or information.]

5. Do you understand that if you are found guilty of more than one of these crimes, this court can order that the sentences be served consecutively, that is, one after another?

6. Do you understand that there are advisory Sentencing Guidelines that may have an effect on your sentence if you are found guilty?

7. Do you understand that if you represent yourself, you are on your own? I cannot tell you or even advise you how you should try your case.

8. Are you familiar with the Federal Rules of Evidence?

9. Do you understand that the rules of evidence govern what evidence may or may not be introduced at trial, that in representing yourself, you must abide by those very technical rules, and that they will not be relaxed for your benefit?

10. Are you familiar with the Federal Rules of Criminal Procedure?

11. Do you understand that those rules govern the way a criminal action is tried in federal court, that you are bound by those rules, and that they will not be relaxed for your benefit?

[Then say to the defendant something to this effect:]

12. I must advise you that in my opinion, a trained lawyer would defend you far better than you could defend yourself. I think it is unwise of you to try to represent yourself. You are not familiar with the law. You are not familiar with court procedure. You are not familiar with the rules of evidence. I strongly urge you not to try to represent yourself.

13. Now, in light of the penalty that you might suffer if you are found guilty, and in light of all of the difficulties of representing yourself, do you still desire to represent yourself and to give up your right to be represented by a lawyer?

14. Is your decision entirely voluntary?

[If the answers to the two preceding questions are yes, say something to the following effect:]

15. I find that the defendant has knowingly and voluntarily waived the right to counsel. I will therefore permit the defendant to represent

Here, the record shows that the trial court warned Haynes that unlike his lawyer, Haynes was neither trained nor skilled in presenting defenses, cross-examining witnesses, or picking a jury; that he was facing a prosecutor who, unlike him, was trained and knew the law; that neither the court nor the prosecutor could give him legal advice, although standby counsel could advise him on procedural matters; that the court reporter was having difficulty hearing him, and that if he presented his own case he would need to speak louder; that he would be held to the same standards of performance as an attorney; that he would not get a new trial simply because he made the decision to represent himself; and that representing

himself [herself].

It is probably advisable to appoint standby counsel, who can assist the defendant or can replace the defendant if the court determines during trial that the defendant can no longer be permitted to proceed pro se.

Federal Judicial Center, Bench Book for U.S. Dist. Ct. Judges § 1.02 (C) (6th ed. 2013), https://www.fjc.gov/sites/default/files/2014/Benchbook-US-District-Judges-6TH-FJC-MAR-2013.pdf. See *Strozier v. Newsome*, 926 F2d 1100, 1109 (11th Cir. 1991). Although not required, these questions, adapted to Georgia law, could provide a useful framework for a Georgia judge to advise a defendant of the dangers of self-representation and to assure the judge that a defendant's decision to proceed pro se is knowing and voluntary.

himself was a "bad idea." The court also questioned Haynes about his education and informed him of the sentence he was facing. Simply put, Haynes

> had been informed . . . of the nature of the charges against him and of the statutory . . . maximum penalties. The record reflects that the trial court, fulfilling its important responsibility in this area, repeatedly apprised him of the dangers to a layman in conducting his own defense. He was well aware [that his sovereign-citizen defense was meritless]. Moreover, an attorney was made available during [his period of self-representation] to respond to any questions of law or procedure that he might have. We find no error in the trial court's determination that [Haynes] waived his right to appointed counsel and that he voluntarily and intelligently elected to proceed pro se after being fully apprised of the possible consequences.

*Staples v. State*, 209 Ga. App. 802, 804 (3) (434 SE2d 757) (1993) (citations omitted). See also *Renfro v. State*, 348 Ga. App. 615, 616-618 (2) (824 SE2d 75) (2019) (defendant knowingly and intelligently waived his right to counsel when, among other things, the trial court warned him that self-representation was a bad idea; warned him that sovereign-citizen beliefs are not a successful defense; provided defendant with a copy of the indictment; and allowed counsel to act as standby counsel). Cf. *Martin-Argaw v. State*, 343 Ga. App. 864, 870 (2) (806 SE2d 247) (2017) (trial court did not make defendant aware of dangers of self-representation

9

when she only informed him "that he would be required to abide by evidentiary and procedural rules without the court's assistance").

2. *Right to be present.*

Haynes argues that the trial court violated his right to be present at trial. "We will affirm a trial court's finding of waiver if any evidence supports it." *Cesari v. State*, 334 Ga. App. 605, 609 (1) (780 SE2d 56) (2015). Evidence supports the trial court's ruling to exclude Haynes from the courtroom, so we hold that the trial court did not err.

(a) *Haynes's behavior.*

The record shows that after the trial court had determined that Haynes waived his right to counsel, the court administered oaths to the jury panel, read the indictment, introduced the parties, announced that the court had entered a not guilty plea on Haynes's behalf, and instructed the jury on the presumption of innocence and the state's burden of proof. The state began asking general voir dire questions when Haynes interrupted that he was "not entrusting the general administrator." The state continued with general voir dire questions. At the conclusion of the general voir dire questions, the court asked Haynes if he wanted to ask general questions. The following then occurred:

THE DEFENDANT: Excuse me, Your Honor. I don't understand these proceedings right now. I don't understand any of these proceedings. They're bringing me here against my will in shackles.

. . .

THE COURT: This is your opportunity, Mr. Haynes, to ask questions. If you choose to ask questions, this is —

THE DEFENDANT: I already said —

THE COURT: — your opportunity.

THE DEFENDANT: I already said, Judge Beyers, that before I engage the bar or hear you, I wanted a simple question answered.

THE COURT: You may have a seat or —

THE DEFENDANT: Are you not the trustee —

THE COURT: if you wish to — you may sit down now.

THE DEFENDANT: Are you not the trustee of the trust?

THE COURT: You may sit down now.

THE DEFENDANT: Is the prosecutor not the executor of this trust?

11

THE COURT: Your opportunity is about to expire, sir, if you don't want to ask questions. Or you're free not to ask any questions. That's your choice. Okay. He's waived his right to questions. That's all the questions we have for the panel.

Individual voir dire then began. When it was Haynes's turn to question a juror, Haynes stated that he had "multiple issues," that "[t]his [was] extortion," and that,

This is racketeering. This is theft, identity theft, extortion. This is fraud against all laws. This is unlawful and you have no right to take me to trial. I don't accept these procedures. In fact, I have already requested a continuance to requested to suspend this matter so I can have interlocutory argument and have these questions answered. I just want to know the truth. Are you the trustee of the trust and is the prosecutor the executor of the trust?

The court warned Haynes that if he continued to be disruptive, he would not be allowed to remain. Haynes responded, "I'm being forced against my will."

The court called in the next juror for individual questions. The state questioned the juror, and when the court asked Haynes if he had any questions, he responded:

I'd like to say that to prevent this court from any more further injurious presumptions that prejudice my constitutional rights by trying to associate me with (inaudible) which is the all-caps version of my Christian name and further address a Robbin Jetial Haynes, the living soul, because I am not to trust what you're administrating.

12

He elaborated that when the court reporter recorded his name, she should "make sure you say Living Soul on it," or she could "say Robbin Jetial Haynes, the beneficiary, whichever one. . . . Just say Robbin Jetial Haynes, the beneficiary, the sole owner, the grantor, the principal, the creditor in which all — " He concluded that he would "like to say respectfully for and on the record that I'm not trusting in which Judge Beyers is administrator. I am the sole owner — "

The court called in the next juror. The court questioned the juror about her hardship, the state had no questions, and when it was Haynes's turn, he stated that he had a question for the court. The court excused the juror from the courtroom, called in the next juror and Haynes stated, "Excuse me. But it is a matter of law that I know the roles in which you are playing today in this courtroom and then I would be willing to engage — "

When it was his turn to question the juror, Haynes said, "I'm brought here against my will in shackles around my ankles. . . . With shackles around my ankles, surrounded by deputies in uniform impersonating bench officers." When the court asked (for the third time) whether Haynes would like to dress in street clothes and have the shackles removed, the following colloquy occurred:

THE DEFENDANT: They struck me with (inaudible) —

13

THE COURT: For the record, two of us are continuing to speak and so I ask the court reporter to take down everything that I'm saying. And so if you talk on top of me you're not going to have a record. So if you want to have a record, then we need to take —

THE DEFENDANT: You'd like that, wouldn't you?

THE COURT: — take turns, Mr. Haynes.

THE DEFENDANT: You'd like that, wouldn't you?

THE COURT: Take turns. I bet you learned that in high school, taking turns.

THE DEFENDANT: Why — why do you have —

THE COURT: Next juror.

THE DEFENDANT: — to be psychologically and physically abusing me? I thought you were better than that, Karen Beyers. You can do better than this.

The next juror entered the courtroom, was questioned, and when it was Haynes's turn to question the juror about his hardship, the following colloquy occurred:

THE DEFENDANT: I don't consent to these proceedings.

THE COURT: If he wants to go in the back, he can go in the back.

THE DEFENDANT: I don't consent to these proceedings at all.

(AFTER EXCUSING THE JUROR FROM THE COURTROOM) THE COURT: He started making a move to the side door. If he wants to go in the side door — actually, let's have a discussion with him about it. Sir, would you like to stay here or do you want to go in the back?

THE DEFENDANT: I don't consent to these proceedings at all.

THE COURT: Do you want to stay or do you want to go out the side door?

THE DEFENDANT: This is extortion. This is coercion. You are forcing me to comply under duress, (inaudible).

THE COURT: Do you wish to stay here or would you like to go out the side door? You may go out the side door. Thank you.

Haynes was removed from the courtroom, but the judge had him returned and the following colloquy occurred:

THE COURT: If you choose to come back in and conduct yourself appropriately, you're free to do that. If you'd like to go out the side door

15

and stay in the back, you're free to do that as well. If that's what you'd like to do, I'm going to instruct the deputies that the moment you change your mind and you would like to come back in, that you're free to do that. So at this point it's your choice. You can either stay and behave yourself or you can go in the back like you began to do on your own anyway. You started heading out the side door and got both deputies up on their feet. So what would you like to do?

THE DEFENDANT: I clearly stated on the record that I don't consent to these procedures.

THE COURT: We got that. It's on [the] record.

THE DEFENDANT: I would if I crossed bar and engaged —

THE COURT: We got all of that. It's on the record multiple times.

THE [DEFENDANT]: I just simply —

THE COURT: Clearly on the record.

THE DEFENDANT: I simply want my question answered.

THE COURT: Would you like to stay or would you like to go out the side?

THE DEFENDANT: I would like my question to be answered.

16

THE COURT: I'm not going to be answering your questions. That's not my role today.

THE DEFENDANT: Actually it is your —

THE COURT: That's not the role I'm —

THE DEFENDANT: — role today.

THE COURT: — playing today.

THE DEFENDANT: What role are you playing today?

THE COURT: I'm playing the role of judge as I indicated earlier. Would you like to stay or go?

THE DEFENDANT: What role are you playing in respect to —

THE COURT: You can go in the back. And we're going to continue without him unless he would like to come on in and participate.

THE DEFENDANT: You can continue without me.

Haynes left the courtroom. The court called in and questioned another juror, the court and the state discussed jurors who had been individually questioned, and

17

then the court stated on the record that she had invited Haynes to notify the deputies if he wanted to return to the courtroom.

The court called in the next jurors for individual questions. and Haynes indicated that he wanted to return to the courtroom. The court allowed Haynes to return and warned him that

> I am not going to put up with any more antics. If you want to continue conducting yourself, sir, in the way that you have been, then I'm going to not allow you to represent yourself anymore and put [appointed counsel] back on it. So you have the option to participate properly. But to continue to ask questions that are not on point, to not participate and to be obstructionist, rude and disrespectful will not be tolerated. So this is what's going to happen. You can conduct yourself appropriately and represent yourself, and if you don't then I'm going to put [appointed counsel] in your place. Similarly, your right to be in the courtroom. Similarly, if you cannot conduct yourself in a certain way I have a couple of options. I can gag you and shackle you. I can remove you from the courtroom altogether. I have all kinds of options. I hope we don't get to that point. You are free to stay, but you have to conduct yourself in a certain way, and if you don't then we'll make adjustments. This is your last warning. There will be no more warnings.

Haynes responded that he no longer wanted his appointed attorney to represent him. The court stated,

You know, because of your behavior he's going to remain as standby. Because if your behavior continues, that will put him in a more prepared position to step in. And because you have not done anything to help represent yourself other than be obstructionist and disruptive, that's not a call you're getting to make right now. So your choice, but if you ask me that question one more time and you start questioning me, that'll be taken as some of the behavior I just put up with and you'll just spend your time in the back and [appointed counsel] will step in. You'll be free to stay as long as you can behave yourself appropriately as a represented defendant at that time. At this point in time we're going to start where we are. We'll see how you roll. But I'm not playing around anymore. This is it. I have warned you, I have warned you, I have warned you. I'm not doing it. And just so you know, somebody that chooses to do what you have done cannot allege ineffective assistance of counsel. So if that's what you're trying to do, you're not doing it. I've got several cases from the United States Supreme Court that say if people choose to screw up their own representation, they can't complain about it later. If that's what you're doing, I suggest you might want to either actively engage in representing yourself in a non-obstructionist way or I will do what I need to do to make sure that you get the representation that you do need.

The court resumed individual voir dire. The court asked Haynes if he had any questions of a juror, and the following colloquy occurred:

THE DEFENDANT: I was curious. Am I being misled here?

19

THE COURT: Would you like to go to the podium and ask the juror questions?

THE DEFENDANT: Are you telling me that these capital commercial crimes are not governed by the UCC?

THE COURT: The defendant continues to be obstructionist, non-responsive and not cooperating in defending himself. I am removing him as pro se and hereby putting you back on, [appointed counsel]. You're up. You're his counsel at this time despite his desire otherwise.

THE DEFENDANT: I don't consent to those decisions, Your Honor.

THE COURT: Understood. And your right to remain in the courtroom will be contingent upon your behavior. We may — you know, you may present us with a decision of whether or not to put you in the back or bind and gag you, but we'll deal with that. I'll give you the benefit of hoping that you might conduct yourself differently. We'll hope and maybe you'll become more cooperative.

THE DEFENDANT: He can't be my lawyer if I don't consent for him to be my lawyer.

THE COURT: You can bring the jurors in, please.

DEFENSE COUNSEL: Judge, can I put something on the record very quickly?

20

THE COURT: Sure.

DEFENSE COUNSEL: And I would just — I would object. Mr. Haynes has a right to an attorney of his choosing or no lawyer. He can represent himself. I understand the authority, but I do just on his behalf object. He's made it clear that he does not want me to represent him.

THE COURT: Objection noted both from him on his own behalf and also from you. Jury, please.

THE DEFENDANT: I understand I have a right to whether or not I have a lawyer, choose a lawyer or not have a lawyer. I do not want a lawyer. So how you are going to force me to have a lawyer? I have the right to go pro se and I have the right to defend myself. You committed a fraud. You are committing a fraud in this courtroom.

The court stated that appointed counsel "has now been placed as the attorney in this case," and defense counsel then participated in voir dire. Haynes informed the court, "Judge Beyers, I don't consent to these proceedings and I'm leaving the courtroom." The court removed the potential jurors from the courtroom and stated, "The defendant can be gone in the back. He's continuing to be obstructionist and he — if he wants to come back and behave himself, he can let you know at the

21

appropriate time and we'll bring him on back in. But we will proceed in his absence at his request. Jurors, please.

Defense counsel participated in individually questioning the remaining jurors and striking the jury. He then represented Haynes through the remainder of the trial. Before the second day of the presentation of evidence, Haynes asked to be brought out to address the court. He was brought out and stated, "Excuse me, but you keep on referring me to this trust. I've already stated before and on the record that I'm not trusting that you're administrator. I just want to get a few facts straight. Before and on the record you forged my signature and forced me to plead not guilty. So I object to these procedures." Haynes did not make any other request to return to the courtroom.

(b) *Legal analysis*.

Although a defendant has a constitutional right to be present at his trial, he can waive that right

> in some circumstances. In the case of disruptive behavior in the courtroom, a defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive and disrespectful of the court that his trial cannot be carried on with him in the courtroom. Once lost, the right

22

to be present can, of course, be reclaimed as soon as the defendant is willing to conduct himself consistently with the decorum and respect inherent in the concepts of courts and judicial proceedings.

*Lovelace v. State*, 262 Ga. App. 690, 693 (4) (586 SE2d 386) (2003) (citation and punctuation omitted). See *Illinois v. Allen*, 397 U. S. 337, 338 (90 SCt 1057, 25 LE2d 353) (1970) (accused can waive right to be present by acting so disruptively "that it is exceedingly difficult or wholly impossible to carry on the trial").

Haynes argues that his behavior was not sufficiently disruptive to warrant his exclusion, particularly since he did not affirmatively inform the court that he would continue his disruptive behavior. We hold that the trial court did not err by removing Haynes given his behavior, including his repetitive arguing, his refusal to answer the judge's questions, and his repeatedly interrupting the judge while she was speaking. Further, when the trial court asked Haynes if he would like to stay in the courtroom without disrupting the proceedings or to leave the courtroom, he only responded that he did not "consent" to the proceedings. And ultimately, Haynes instructed the trial court that "you can continue without me," and that he was "leaving the courtroom."

Under these circumstances, the trial court did not err by removing Haynes from the courtroom. *Lovelace*, 262 Ga. App. at 693 (4) (trial court acted properly in

23

removing defendant from the courtroom when he interrupted the court, continued to protest that his attorney was not representing him, and was argumentative). See also *United States v. Benabe*, 654 F3d 753, 761-771, 766 (II) (B) (7th Cir. 2011) (although defendants "cloaked themselves in politeness . . . their frequent and undeterred outbursts, in which [they asserted sovereign-citizen defenses] were obstructive, disrespectful, and potentially inflammatory[, . . . ] sidelined the legitimate business of the court[] and wasted valuable judicial resources[,]" and amounted to a waiver of their right to be present, justifying their removal).

3. *Right to self-representation*.

Haynes argues that assuming the trial court correctly ruled that he had knowingly and intelligently waived his right to counsel, as we held in Division 1, supra, the trial court erred in reinstating his lawyer without his consent. We hold that the trial court did not err.

As described above, once Haynes was removed from the courtroom, the trial court ruled that the attorney who had been assisting as standby counsel would conduct the trial on Haynes's behalf. The United States Supreme Court paved the way for the trial court's ruling in *Faretta*, 422 U. S. at 806, stating that

24

the trial judge may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct. Of course, a [s]tate may — even over objection by the accused — appoint a "standby counsel" to aid the accused if and when the accused requests help, and to be available to represent the accused in the event that termination of the defendant's self-representation is necessary.

Id. at 834 n. 46 (IV). See also *Thomas v. Carroll*, 581 F3d 118, 126 (III) (3d Cir. 2009) ("(I)f no counsel is appointed to represent an absented pro se defendant, there is a real danger that the ensuing lack of rigorous adversarial testing that is the norm of Anglo-American criminal proceedings will undermine the accuracy of the truth-determining process by eliminating the trier of fact's basis for evaluating the truth of the testimony. Further, a criminal trial is not a private matter; the public interest is so great that the presence and participation of counsel, even when opposed by the accused, is warranted in order to vindicate the process itself.") (citations and punctuation omitted); ABA Standards for Criminal Justice 6-3.9 (2000) ("If a defendant who is permitted to proceed without the assistance of counsel engages in conduct which is so disruptive . . . that the trial cannot proceed in an orderly manner, the court should, after appropriate warnings, revoke the permission and require representation by counsel. If standby counsel has previously been appointed, the

25

counsel should be asked to represent the defendant."). Under the circumstances of this case, the trial court did not err in asking previously appointed counsel to represent Haynes in his absence.

4. *Merger*.

Haynes argues that the trial court erred in imposing the armed robbery sentences. We agree.

Count 1 of the indictment charged Haynes with using a handgun to take a restaurant's currency in the presence of an employee of the restaurant, and Count 2 charged Haynes with using a handgun to take that employee's currency. Count 3 charged Haynes with, the next day, using a handgun to take a restaurant's currency in the presence of an employee, and Count 4 charged Haynes with using a handgun to take that employee's cellular telephone. Haynes was found guilty on all four counts and was sentenced to a concurrent life sentence on each count.

We hold that Counts 1 and 2 alleged only one robbery and Counts 3 and 4 alleged only one robbery because

> [r]obbery is a crime against possession, and is not affected by concepts of ownership. Similarly, one may only rob a person, and not a corporate entity, or an object such as a cash drawer. It follows that since there was only one victim [in Counts 1 and 2 and only one victim in Counts 3 and

26

4], who [were] by [each] transaction despoiled of [their] possession of both [their own property and the restaurants' money], there was only one robbery [in each instance].

*Creecy v. State*, 235 Ga. 542, 544 (5) (221 SE2d 17) (1975) (citation omitted); accord *Randolph v. State*, 246 Ga. App. 141, 144 (1) (538 SE2d 139) (2000). So we agree with Haynes that only one armed robbery was committed in Counts 1 and 2 and one armed robbery was committed in Counts 3 and 4. See *Jones v. State*, 279 Ga. 854, 857 (3) (622 SE2d 1) (2005) ("[W]here one victim is robbed of multiple items in a single transaction, only one robbery is committed."); *Tesfaye v. State*, 275 Ga. 439, 442 (4) (569 SE2d 849) (2002) ("When a victim is robbed of more than one item in a single transaction, only one robbery may be charged."). We observe that, although not explicit in the cited cases, this holding comports with the unit-of-prosecution analysis applicable when a defendant is charged with multiple counts of the same crime, given the implication that the relevant unit of prosecution is the robbery of a person, regardless of how many items are taken. See *Scott v. State*, 306 Ga. 507, 509 (2) (832 SE2d 426) (2019); *State v. Marlowe*, 277 Ga. 383 (589 SE2d 69) (2003). "Consequently, the trial court erred in entering . . . separate judgment[s] of conviction and sentence[s] for armed robbery as alleged in Count[s 2 and 4] of the indictment.

[Those] judgment[s] of conviction [are] vacated, and the trial court is directed to strike the sentence[s] imposed on [those] count[s]." *Moore v. State*, 340 Ga. App. 151, 153 (1) (796 SE2d 754) (2017).

*Judgment affirmed in part and vacated in part, and case remanded with direction. Doyle, P. J., and Hodges, J., concur.*