**FIFTH DIVISION
RICKMAN, C. J.,
McFADDEN, P. J., and SENIOR APPELLATE JUDGE PHIPPS**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**March 11, 2022**

# In the Court of Appeals of Georgia

A21A1547. BLAND v. THE STATE.

McFADDEN, Presiding Judge.

Shaun Bland was charged by indictment with five counts of aggravated child molestation, two counts of child molestation, and one count of enticing a child for indecent purposes. He was tried before a jury, which found him guilty of all the charged offenses. The trial court imposed life sentences for the aggravated child molestation offenses, 20-year sentences for the child molestation offenses, and a 30-year sentence for the enticement offense, with all of the sentences to run concurrently. Bland filed a motion for new trial, which the trial court denied.

Bland appeals from the denial of his motion for new trial, challenging, among other things, the sufficiency of the evidence supporting the verdict and the trial court's continuance of the trial in Bland's absence. While there was sufficient

evidence to support the jury's verdict, the trial court erred in proceeding with critical stages of the trial in Bland's absence. We therefore reverse the judgment and remand the case for a new trial.

1. *Sufficiency of the evidence.*

On appeal from a criminal conviction, "[w]e do not weigh the evidence or judge the credibility of witnesses, but determine only whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Stodghill v. State*, 351 Ga. App. 744, 744-745 (1) (832 SE2d 891) (2019) (citation and punctuation omitted). So viewed, the state presented evidence showing that Bland had sexually abused his two minor stepdaughters, K. M. and A. C. At trial, K. M. testified that Bland had engaged in oral sodomy and other sexual acts with her on multiple occasions and that she had once seen him engage in oral sodomy with A. C. The state also presented evidence of K. M.'s outcry to her mother about the alleged abuse and K. M.'s videotaped forensic interview describing the abuse.

In challenging the sufficiency of the evidence, Bland does not point to deficiencies regarding specific elements of the charged offenses. Rather, he makes the general argument that "there was testimony from only one witness and no physical

2

evidence to support the witness' testimony." Contrary to Bland's argument, there were actually seven witnesses for the state and he has not identified which particular witness he is referencing. Nevertheless, we presume that he is referring to K. M.'s testimony describing the alleged sexual abuse. Bland's argument, however, is without merit since "[t]he testimony of a single witness is generally sufficient to establish a fact." OCGA § 24-14-8. Indeed, "the victim's testimony alone is generally sufficient to establish the elements of child molestation. Thus, Georgia law does not require corroboration of a child molestation victim's testimony." *Carter v. State*, 320 Ga. App. 454, 455 (1) (740 SE2d 195) (2013) (citation and punctuation omitted). So "[t]he testimony of [K. M.] alone supports [Bland's] convictions, despite the absence of any physical evidence." *Barnes v. State*, 299 Ga. App. 253, 254 (1) (682 SE2d 359) (2009) (footnote and punctuation omitted).

2. *Right to be present at trial.*

Bland asserts that the trial court denied his right to be present at critical stages of his criminal trial. We agree.

The record shows that after the state had presented its evidence and rested, Bland presented several defense witnesses and then began to testify in his own defense. But before Bland addressed the specific allegations of abuse in this case, the

3

trial court interrupted his testimony and indicated that the trial would resume the following day. The next morning, which was a Friday, Bland did not appear in court and his counsel informed the judge that Bland was hospitalized with injuries sustained after he had jumped from a vehicle while on the way to the courthouse. The judge immediately revoked Bland's bond, announced that he was under arrest, and directed the sheriff's department to monitor his hospital room. The judge recessed the case until the following Monday morning, indicating that the options at that point would be to proceed with the trial in Bland's absence, continue the case, or declare a mistrial.

After having released the jury for the weekend, the judge brought two of the jurors back into the courtroom and questioned them about whether returning on Monday would be a hardship. The judge then excused one of the jurors and told the other juror that she would also be excused if should could not change a scheduled flight. The judge next called an alternate juror into the courtroom and questioned him about a conversation he had engaged in with the district attorney and a detective outside the courtroom. The alternate juror stated that he was impartial between the state and the accused, neither counsel for the state nor defense asked him any questions, and the judge directed that the alternate should return to court on Monday.

4

That following Monday, Bland's attorney told the court that Bland was still at the hospital and that after he was physically cleared he would be monitored for 72 hours for psychological evaluation. Defense counsel told the court that Bland wished to be present at trial and he submitted a video-recorded statement from Bland informing the court that he still wanted to be heard at trial and that his testimony was crucial to his case. Bland's counsel moved for a continuance of the case and for a mistrial. The state opposed the defense motions and requested that the trial continue without Bland, citing *Hunter v. State*, 263 Ga. App. 747 (589 SE2d 306) (2003) for the proposition that Bland had waived his right to be present at trial. The trial court accepted the state's position and ruled that pursuant to *Hunter* the trial would continue without Bland because he was voluntarily absent based on having jumped from a vehicle.

Thereafter, the judge announced that the juror who had been questioned about her flight the previous Friday had not appeared in court, so the judge excused her from further service on the jury. Although it is not expressly shown by the transcript, apparently the judge replaced that juror and the previously dismissed juror with alternate jurors, because he then called 12 jurors into the courtroom individually to give them each instructions about Bland's absence from the trial. The court then

5

called the entire jury into the courtroom and announced that the trial would proceed. Upon inquiries from the judge, Bland's attorney stated that the defense rested and the state offered no rebuttal evidence.

The attorneys for both sides then gave their closing arguments; the court gave the final charge to the jury; the jurors began deliberations, during which they asked to view a portion of Bland's recorded in-custody statement; the court, without objection, allowed the jury to return to the courtroom and re-watch a seven-minute segment of Bland's in-custody statement; approximately 30 minutes later the jury returned its guilty verdict; the jurors were polled by the court and then excused; the judge announced that the sentencing hearing would be held at a later date; and the proceedings were concluded. Approximately four weeks later, Bland appeared in court for his sentencing hearing.

> Embodied within the [Georgia] constitutional right to the courts, see Art. I, Sec. I, Par. XII of the Georgia Constitution of 1983, is a criminal defendant's right to be present and see and hear, all the proceedings against him on the trial before the [c]ourt. This is a fundamental right and a foundational aspect of due process law. This right has been interpreted to attach at any stage of a criminal proceeding that is critical to its outcome if the defendant's presence would contribute to the fairness of the procedure. This [c]ourt has determined that a critical stage in a criminal prosecution is one in which a defendant's rights may be lost, defenses waived, privileges claimed or

6

waived, or one in which the outcome of the case is substantially affected in some other way.

*Williams v. State*, 307 Ga. 689, 695 (4) (b) (838 SE2d 314) (2020) (citations and punctuation omitted). "[A] denial of the right to be present guaranteed by the Georgia Constitution is not [subject to harmless error review]. It is presumed to be prejudicial. Thus, absent a valid waiver by defendant, a violation of the right to be present enshrined in the Georgia Constitution triggers reversal and remand for a new trial." *Cesari v. State*, 334 Ga. App. 605, 608-609 (1) (780 SE2d 56) (2015) (citation and punctuation omitted).

In the instant case, Bland was absent from multiple critical stages of his trial as recounted above. Those critical stages included the judge's colloquies with two jurors and dismissal of one of those jurors, and the judge's colloquy with an alternate juror about his impartiality, all of which occurred before the judge actually ruled that Bland had waived his right to be present. See *Gobert v. State*, 311 Ga. 305, 310 (2) (857 SE2d 647) (2021) (proceeding at which the jury composition is changed is a critical stage at which the defendant is entitled to be present); *Brewner v. State*, 302 Ga. 6, 11 (II) (804 SE2d 94) (2017) (defendant has the right to be present during a colloquy between the trial judge and a juror). Other critical stages of the trial which

7

were held in Bland's absence included the court's dismissal of a second juror and apparent replacement of the two dismissed jurors with alternate jurors, see *Gobert*, supra (changing composition of the jury a critical stage); the court's various colloquies with and instructions to individual jurors, see *Brewner*, supra (trial court's colloquy with juror a critical stage); the closing arguments of the attorneys, see *Tyner v. State*, 334 Ga. App. 890, 895 (1) (780 SE2d 494) (2015) (closing argument is a critical stage of a trial); and the return of the verdict, see *Tyner*, supra (receiving jury verdict is a critical stage of a trial).

The state argues that the trial court properly relied upon *Hunter*, supra, to find that Bland had waived his right to be present at those critical stages of his trial. But the instant case is materially different from, and not controlled by, *Hunter*. In that case, this court found that a defendant who had left court during a break in his trial and attempted to commit suicide by slitting his wrists was "thereafter voluntarily absent from the proceeding, [and thus] waived his right to be present at the remainder of the trial." *Hunter*, supra at 748 (1) (citation and punctuation omitted).

As an initial matter, we note that because of the material differences between the current case and *Hunter*, we need not address the question of whether it was appropriate for this court to have determined, without reference to any expert

8

testimony on the matter, that an attempted suicide constituted a voluntary waiver of the right to be present at trial. The state attempts to analogize the instant case to *Hunter* by referring to Bland's attempted suicide; but there is no evidence that Bland's act of jumping from the vehicle was an attempted suicide. There was no evidence presented to the trial court as to any circumstances surrounding the incident; there was no evidence explaining why he jumped; and there was no testimony from Bland, as there was from the accused in *Hunter*, stating that he wanted to commit suicide. Given the lack of evidence, the state's characterization of the incident is mere speculation and distinguishes it from *Hunter*.

Moreover, Bland expressly informed the court in his recorded statement that he wanted to return to the trial. So unlike *Hunter*, the judge in this case had a clear statement from the accused that he was not voluntarily waiving his right to be present for the remainder of the trial. Furthermore, Bland indicated in his recorded statement that he wanted to finish his trial testimony that had been interrupted by the court. So the continuance of the trial without Bland deprived him of his right to testify. See *Danenberg v. State*, 291 Ga. 439, 442 (5) (729 SE2d 315) (2012) ("The right to testify on one's own behalf in defense to a criminal charge is a fundamental constitutional right[.]") (citation and punctuation omitted).

Given these critical differences between the instant case and *Hunter*, and pretermitting the question of whether that prior case was correctly decided, we conclude that the trial court erred in relying on *Hunter* to find that Bland had voluntarily waived his right to be present at his criminal trial. "Because [Bland] was absent from . . . critical part[s] of his trial and [there is no evidence of a] waiver [of his right to be present, and instead] he made known that he [wanted] to return to court [and finish his trial testimony], the judgment must be reversed and the case remanded for a new trial." *Cesari*, supra at 610 (1) (defendant who voluntarily absented himself from courtroom later reclaimed his right to be present).

3. *Remaining enumerations of error.*

As a result of our decision above in Division 2, we need not address Bland's remaining claims of error.

*Judgment reversed and case remanded.  Rickman, C. J., and Senior Appellate Judge Herbert E. Phipps concur.*